# NAP BRISSON v. MINNEAPOLIS BASEBALL & ATHLETIC ASSOCIATION.[1]

March 18, 1932.

No. 28,742.

*Jackson, Walsh & Yackel,* for appellant.
*Olof L. Bruce* and *L. O. Johnson,* for respondent.

LORING, J.

Plaintiff had a verdict for injuries received while he was a spectator at one of the league games played in defendant's park. The defendant appealed from the order denying its alternative motion for judgment or a new trial.

For the game at which he was hurt plaintiff bought a ticket for a grand stand seat, but asserts that such seats were all filled when he arrived and that he followed a part of the crowd to temporary seats located outside the foul line behind third base. A part of the grand stand was screened. The bleachers and the temporary seats were not. Some time in the sixth inning a foul ball was batted toward these temporary seats and, after striking the ground, struck plaintiff in the head, causing his injuries. He claims to have

[1]Reported in 240 N. W. 903.

been ignorant of the risks to which he was exposed by the game; with which, he said, he was unfamiliar. As a small boy he had witnessed ball games, and as an adult he had recently witnessed at least one league game.

There are very few cases where the courts have passed upon the liability of proprietors of ball parks to spectators injured by the ordinary playing of the game of baseball. In our own court the case of Wells v. Minneapolis B. & A. Assn. 122 Minn. 327, 142 N. W. 706, 46 L.R.A. (N.S.) 606, Ann. Cas. 1914D, 922, appears to be the only such case. Crane v. Kansas City B. & E. Co. 168 Mo. App. 301, 153 S. W. 1076, and Kavafian v. Seattle B. C. Assn. 105 Wash. 215, 177 P. 776, 181 P. 679, are cases which have been brought to our attention. In the case of Cincinnati B. C. Co. v. Eno, 112 Ohio St. 175, 147 N. E. 86, the plaintiff was injured by players who were practicing between the two games of a double-header and was exposed to greater hazards than when the game was being played in the ordinary way. In Blakeley v. White Star Line, 154 Mich. 635, 118 N. W. 482, 19 L.R.A. (N.S.) 772, 129 A. S. R. 496, the plaintiff was injured at an amusement park by a game of ball which was being played outside the regular diamond provided for that purpose. In the Missouri and Washington cases the defendant was held not guilty of negligence where it provided both screened and unscreened seats and where the plaintiff had a choice as to which he might occupy. In the Wells case, 122 Minn. 327, 142 N. W. 706, 46 L.R.A. (N.S.) 606, Ann. Cas. 1914D, 922, this court said that the perils of a ball game are not so imminent that due care requires that all the spectators be screened in and that the management cannot be held negligent when it provides a choice between a screened-in and an open seat, the screen being sufficient as to extent and substance. In the case at bar we are confronted with the question whether the management must provide screened seats for all those who desire them, regardless of the number of spectators who come to see the game.

On this appeal we are assuming that the plaintiff had no choice, because at the time he arrived at the game the screened seats had all been occupied. We do not think that the management must,

in order to free itself from the charge of negligence, provide screened seats for all who may possibly apply therefor. In our opinion they exercise the required care if they provide screen for the most dangerous part of the grand stand and for those who may be reasonably anticipated to desire protected seats, and that they need not provide such seats for an unusual crowd, such as the one in attendance at the game here involved.

The question however as to reasonable care on the part of defendant in placing the emergency seats where it did is not so free from doubt. In view of the disposition which we make of the case on the ground of the assumption of the risk, it becomes unnecessary for us to dispose of the question of defendant's negligence in that respect. As said in the Ohio case above cited [112 Ohio St. 180]:

"The concensus of the above opinions is to the effect that it is common knowledge that in baseball games hard balls are thrown and batted with great swiftness, that they are liable to be thrown or batted outside the lines of the diamond, and that spectators in positions which may be reached by such balls assume the risk thereof. This theory is fortified by the fact that such spectators can watch the ball and can thus usually avoid being struck when a ball is directed toward them."

Does the plaintiff's asserted ignorance of the risk to which he was exposed take him outside of the usual rule in regard to spectators in his situation at such games? We are assuming it to be true that his knowledge of the game was such only as he had acquired by observation when he was young and by seeing the more recent league game, as well as the one he was then attending. In our opinion no adult of reasonable intelligence, even with the limited experience of the plaintiff, could fail to realize that he would be injured if he was struck by a thrown or batted ball such as are used in league games of the character which he was observing, nor could he fail to realize that foul balls were likely to be directed toward where he was sitting. No one of ordinary intelligence could see many innings of the ordinary league game without coming to a full realization that batters cannot and do not control

the direction of the ball which they strike and that foul tips or liners may go in an entirely unexpected direction. He could not hear the bat strike the ball many times without realizing that the ball was a hard object. Even the sound of the contact of the ball with the gloves or mitts of the players would soon apprize him of that. It is our opinion that the plaintiff, notwithstanding his alleged limited experience, must be held to have assumed the risk of the hazards to which he was exposed.

The order appealed from is reversed, and the case is remanded with directions to the trial court to enter judgment for defendant notwithstanding the verdict.