### KEYS et al. v. ALAMO CITY BASE-BALL CO.

### No. 10901.

Court of Civil Appeals of Texas. San Antonio.

Feb. 19, 1941.

Rehearing Denied April 30, 1941.

See, also, Tex.Civ.App., 142 S.W.2d 694.

Sam ·G. Newton and Van H. Archer, both of San Antonio, for appellants.

House & Irvin, of San Antonio, for appellee.

SMITH, Chief Justice.

This action was brought by Mrs. Frieda Keys (herein referred to as plaintiff) and her husband, M. T. Keys, against Alamo City Baseball Club, a corporation, defendant, to recover damages for personal injuries sustained by Mrs. Keys when she was struck by a batted baseball in the course of a Texas League game being played in Tech Field, operated by the Baseball Company in the City of San Antonio.

The record shows that the plaintiff, forty-two years of age at the time, attended this game in company with her fourteen-year-old son. According to her testimony this was the second baseball game the plaintiff had ever witnessed, the other being one played a few years before in Waco. She testified that she knew nothing of the game or the dangers lurking in and about playing fields. This particular park was equipped with a large area of seats behind the familiar wire screen strung between the grand stands and the playing field, and with a larger area of seats which were not screened off from the field. A large crowd of spectators, attracted by advertised "Ladies Night," attended this game, but did not fill the screened sections, where some 300 or 400 seats remained unoccupied. Patrons of the game had absolute choice between screened and unscreened sections, seats in the former being more expensive than those in other sections. It is in evidence, if it is not so as a matter of common knowledge, and as some courts have held (Quinn v. Recreation Park Ass'n 3 Cal.2d 725, 46 P.2d 144), that some patrons prefer seats from which the view of the game is unobstructed by screens; others prefer screened areas, and pay the additional cost exacted for the privilege of using them.

Before entering the park enclosure plaintiff stepped to the ticket window and said to the clerk, "give me a ticket." She was given one calling for a seat in an unscreened area, which she accepted without complaint or comment. She went with her son into an unscreened section of the grand stands; she saw no vacant seats, but some person familiar with the seating situation, apparently a peanut vendor not connected with the operation of the park, pointed out two vacant seats nearby and plaintiff and her son occupied those seats. Plaintiff knew, of course, that this was an unscreened area.

The accident occurred during active play, in the fifth or sixth inning. At the moment she was struck, plaintiff was paying no attention to the game, or to the players or the ball; her head was turned away from the field and she was looking back and talking to a friend seated several rows back up the incline behind her. At this juncture a batter hit a foul ball which was deflected into the stands, striking plaintiff in the chest and painfully injuring her. Her son, sitting in a seat adjoining hers, but watching the game in front of him, saw the ball coming and "ducked it," thereby escaping injury.

The jury found that while defendant was not negligent in failing to provide a screen or other protective device for that area, it was negligent in failing "to warn (plaintiff) of the danger, if any, incident to sitting in the unprotected area of grand stand," and that this negligence was a proximate cause of her injury; that plaintiff was not negligent in occupying the seat in question, and did not fail to keep a proper lookout, or assume the risk of sitting there; that the accident was not unavoidable.

After verdict, however, the trial judge, upon appropriate motion, rendered judgment for defendant non obstante veredicto. The Keys, plaintiffs below, have appealed.

It will be observed, then, that the jury exonerated both parties from negligence in all respects submitted, except the one finding that defendant was negligent in not warning plaintiff of the dangers incident to occupancy of a seat in the unscreened area.

Now, plaintiff contends, in effect, that she knew nothing of the dangers incident to the game of baseball, and that, therefore, it was the duty of defendant to warn her of those dangers, and the jury found that the failure of defendant to so warn

her constituted negligence proximately causing the accident; and, further, that she did not assume the risk. We are of the opinion that both findings are conclusively refuted both by the evidence and by common knowledge, as well.

The questions, as raised here, of the duties and liabilities of operators to patrons of baseball parks and other athletic fields, have never been decided in any Texas case cited by the parties or found by this Court.

Plaintiff has cited many cases, from this and other jurisdictions, but only two of them—Olds v. St. Louis Nat. Baseball Club, 232 Mo.App. 897, 104 S.W.2d 746; Ratcliff v. San Diego Baseball Club, 27 Cal. App. 733, 81 P.2d 625, 627—relate to the peculiar liability to their patrons of operators of baseball parks. And in both those cases the plaintiffs were injured while within screened sections of the grand stands, calling for the application of a rule of liability materially different from that available to one injured while occupying unscreened areas. In all the other cases cited by plaintiff the complaining parties were injured as results of negligent construction or operation of stores, theatres and other places not comparable to baseball or other athletic fields.

Operators of baseball parks are not insurers of the safety of their invited patrons. They are required only to exercise that kind and degree of care commensurate with the character of the amusement offered and the nature of the accommodation usually required for the comfort and convenience of patrons. Specifically, the rules directly applicable here are quoted with approval in the California case cited by plaintiff, as follows: "With respect to the law governing cases of this kind, it has been generally held that one of the natural risks assumed by spectators attending professional games is that of being struck by batted or thrown balls; that the management is not required, nor does it undertake to insure patrons against injury from such source. All that is required is the exercise of ordinary care to protect patrons against such injuries (Edling v. Kansas City Baseball, etc., Co., 181 Mo.App. 327, 168 S.W. 908), and, in doing so, the management is not obliged to screen all seats, because, as pointed out by the decisions, many patrons prefer to sit where their view is not obscured by a screen. Moreover, the management is not required to provide screened seats for all who may ap-

ply for them. The duty imposed by law is performed when screened seats are provided for as many as may be reasonably expected to call for them on any ordinary occasion (Wells v. Minneapolis Baseball, etc., Ass'n, 122 Minn. 327, 142 N.W. 706, 46 L. R.A.,N.S., 606, Ann.Cas.1914D, 922; Brisson v. Minneapolis Baseball, etc., Ass'n, 185 Minn. 507, 240 N.W. 903); and if as in the cases of Wells v. Minneapolis Baseball etc., Ass'n, supra, and Kavafian v. Seattle Baseball Club Ass'n, 105 Wash. 215, 177 P. 776, 181 P. 679, a spectator chooses to occupy an unscreened seat, or, as in the Brisson Case, supra, is unable to secure a screened seat and consequently occupies one that is not protected, he assumes the risk of being struck by thrown or batted balls; and, if injured thereby, is precluded from recovering damages therefor." Ratcliff v. San Diego Baseball Club, supra.

In addition to the cases cited in the above quotation, the same rules, stated in varying language, are upheld in the following cases: Blakeley v. White Star Line, 154 Mich. 635, 118 N.W. 482, 19 L.R.A.,N. S., 772, 129 Am.St.Rep. 496; Cates v. Cincinnati Exhibition Co. et al., 215 N.C. 64, 1 S.E.2d 131; Crane v. Kansas City Baseball & Exhibition Co., 168 Mo.App. 301, 153 S.W. 1076; Waddel's Administrator v. Brashear, 257 Ky. 390, 78 S.W.2d 31, 98 A.L.R. 553; Ingersoll v. Onondaga Hockey Club, Inc., et al., 245 App.Div. 137, 281 N. Y.S. 505; Ivory v. Cincinnati Baseball Club Co., 64 Ohio App. 514, 24 N.E.2d 837. The facts bring this case clearly within the doctrine stated and upheld by the cases cited. That rule does not appear to be questioned in any jurisdiction.

■ As stated, plaintiff is a woman, forty-two years of age. Her son is fourteen years of age. It is inferable from the record that he was a baseball "fan" as is nearly every normal American boy. He was in the habit of attending games at Tech Field. It is further inferable, as a matter of course, and not at all denied by plaintiff, that for years he had handled baseballs in and around his home, under the watchful eye of his mother. This his-

tory, coupled with a universal common knowledge, was bound to have acquainted plaintiff with the potential dangers inherent in a baseball in play; with the fact that a flying baseball is capable of inflicting painful, sometimes serious and even fatal, injury; and that when in play it may fly in any direction and strike any bystander not on the alert to evade it. The knowledge of those characteristics of a baseball must be imputed to every reasonable person having the admitted experience and opportunities of plaintiff to know these things. Added to that imputed knowledge, plaintiff had sat through five or six innings in this very game, and her son, sitting by her side, noticed that several foul balls had been batted into the grand stands and within the range of his observation. We think the record conclusively refutes the jury finding that plaintiff did not "assume the risk" of the very accident which befell her, and that the trial judge did not abuse his discretion in rendering judgment against plaintiff, notwithstanding that finding.

■ Nor does the record show the trial judge abused his discretion in disregarding the jury finding that defendant was guilty of negligence in failing to warn plaintiff of the dangers incident to occupancy of the unscreened area. Plaintiff was a mature woman, presumably possessed of average intelligence, with nothing about her manner or appearance to set her apart from the thousands of other patrons entering the park on this occasion, or to indicate her claimed inexperience or lack of appreciation of the perils of the game. Her own son, sitting at her side, with full knowledge of those perils and of the extent of his mother's awareness, did not warn her. It would have been absurd, and no doubt would have been resented by many patrons, if the ticket seller, or other employees, had warned each person entering the park that he or she would be imperiled by vagrant baseballs in unscreened areas. And yet that would have been defendant's duty, if plaintiff's contention is sound. We overrule that contention.

The judgment is affirmed.