**KNEBEL  v.  JONES et ux.**

No. 10206.

Court of Civil Appeals of Texas.

Austin.

March 10, 1954.

Rehearing Denied March 31, 1954.

HUGHES, Justice.

Perry L. Jones and wife, Catherine Jones, appellees, sued E. P. Knebel for damages for personal injuries sustained by Mrs. Jones when she was struck by a batted baseball while attending, as a paying guest, a Big State League play-off game in appellant's baseball park, Disch Field, in the City of Austin on September 6, 1951.

Coleman Gay, David Tisinger, Austin, for appellant.

Jones, Herring & Jones, Austin, for appellee.

Mrs. Jones was injured while seated in the grandstand, her approximate position being shown on the picture inserted below at the point marked "X":

The view which Mrs. Jones had from her seat looking in the direction of home plate is shown below:

Trial was to a jury which found in favor of appellees and judgment followed the verdict.

The jury found: (1) that appellant was negligent in failing to provide a screen for the area of the grandstand occupied by Mrs. Jones and that such negligence was the proximate cause of the injury; (2) that appellant was negligent in failing to provide any character of notice to indicate what seats in the grandstand were not protected and that such negligence was a prox-imate cause of the injury; (3) that appellant maintained the protective screen in question in a sagging condition and that such was negligence and the proximate cause of the injury; (4) that, at the time in question, neither of appellees knew or, in the exercise of ordinary care, should have known, that appellee Mrs. Jones was seated in a seat in which she was unprotected by the screen wire; (5) that Mrs. Jones remaining in said seat was not negligent; (6) that the injury in question was not the result of an unavoidable accident; and (7) that $40,000 would compensate appellees for the damages suffered by them as a result of the injury.

Appellant has numerous assignments of error but since we have concluded that assignments one and two complaining of the trial court's action in overruling his motion for an instructed verdict at the close of all evidence and in refusing to grant his motion for judgment notwithstanding the verdict should be sustained it is unnecessary that we mention or discuss any other assignments.

The game was played at night and being a play-off game a larger crowd than usual was on hand. Appellees had attended many games at Disch Field and Mr. Jones knew that the west grandstand in which they were accustomed to sit was not entirely protected by wire netting. The evidence is not entirely clear that Mrs. Jones knew this as she had always sat in a protected area.

Appellees went to the ball park shortly before game time accompanied by three children between eight and eleven years of age. They purchased grandstand tickets and entered the protected section and proceeded to where they were accustomed to sit in such section. They went to the top of the stand looking for seats, and, being unable to find seats proceeded southward, towards first base, and took the first vacant seats. Appellees sat on the second row from the top and the children sat behind them on the top row. The seats were poor, Mr. Jones having to look to the left of a post and Mrs. Jones to the right. Upon taking their seats Mrs. Jones began writing down the lineup as it was being announced over the loudspeaker. Just prior to game time the lights in the grandstand were dimmed so that the illumination there was about half the brilliance of the light of the playing field. Ten players had batted and the game had been in progress about ten or twelve minutes when Mrs. Jones was injured by a foul ball hit off the bat of a righthanded player while batting in the normal batting position at home plate.

Mrs. Jones testified that she never realized she was unprotected; that she had never knowingly sat in an unprotected seat; that she did not know the screen was over only a part of the grandstand because she had never sat that far south; that, having become accustomed to the screen wire, "It is like looking out a screen window. You get so used to looking out, you are not conscious of it."; that she would not have sat in an unprotected area if it had come to her attention, and she did not make a knowing choice to sit in an unprotected area; and that she had never allowed any of her family to sit in unprotected areas and would not let her children go to the bleachers with the knothole gang and she would not have taken her children into an unprotected area if she had been conscious of the fact that it was unprotected.

Mr. Jones testified that the roof is a trap; it is the thing that would mislead anybody; you feel like you are in a room because where we were sitting, the roof over the back seat could be touched by standing up, and the roof extends some forty feet or more out over you. Further, he stated the roof is much more noticeable than the screen, because the roof is right

over your head and the screen is far out in front of you, beginning where the roof ends; that the screen slants away from you that there was nothing to bring to a patron's attention that that part of the grandstand was unprotected; that he had known for a year or two before that this general area was protected; that in familiar surroundings, seated in the same general area where you always have, knowing that this was a screened area, there is nothing to direct your attention to the fact that you have stepped beyond the protected area; and that "it was ridiculous to say he would knowingly sit in a place where he would risk his eight year old boy's life, or my wife's, or mine, or any of us." He further stated that they sought a seat behind the screen or they would not have gone in where they did and struggled through the crowd to find a seat; that they had relied upon the protection of the screen in the past; that on this particular evening they were sitting in the same general area; and that they were not conscious of the fact that the screen upon which they had relied in the past did not extend to the seat occupied by Mrs. Jones.

The portion of the west grandstand in which appellees were sitting was not a part of the original construction but was added in 1949. This new section contained 1,100 seats measuring each seat to be 18 inches and this section was not protected by screen wire. The old part of the grandstand had 2,377 seats 18 inches wide, excluding box and reserved seats all of which were protected by screen wire. On the night in question 1,939 grandstand seats were sold. Children 8 years old and under are not charged for admission and the number of such children then present is not shown. Neither does the evidence show how many of the 1,939 grandstand patrons sat in the protected area or in the unprotected area. The evidence does show that both areas had occupants.

The grandstand area along first base line which was protected by screen wiring, as measured from home plate, extended 42.5 feet to the point where the top of the screen meets the roof of the grandstand and 49 feet to the point where the bottom of the screen is fastened.

Regarding the amount of screen at Disch Field Mr. B. A. Falk, baseball coach at the University of Texas and former Major League baseball player, testified:

"Q. Now, with reference to the amount of screen wire protection afforded to the patrons at Disch Field, how does it compare to the other parks you have seen in your experience? A. Well, I would say so far as big league parks are concerned, it would be more than twice the amount that they have in the big league parks that I have noticed the screen.

"Q. You have seen all the parks in the American League? A. I have."

Appellees proved that the Texas University baseball grandstand and the Austin High School baseball grandstand were completely screened and there was some evidence that baseball parks of the Texas League had more screened area than Disch Field.

The evidence is undisputed that appellees received no warning of any character that the seat in which Mrs. Jones sat was in an unprotected area.

It is undisputed that from the seat Mrs. Jones occupied, that the batter from the right ankle up was visible without peering through the screen.

Mr. Jones testified:

"Q. As shown by the test you made yesterday afternoon, sitting in Mrs. Jones' seat, the entire batter was visible except, I believe, from about the ankle down of one leg? A. Somewhere along there.

"Q. And from where you were sitting, the head and one shoulder at least of the batter were visible? A. That is correct.

"Q. So no one sitting in either of those seats and looking towards the batter's box could have had any doubt

as to those facts, could he, as to what he could be able to see? A. I could see it yesterday.

"Q. Well, you could see it that night? A. If I had been as conscious of it as I was yesterday, yes.

"Q. In other words, if you had looked to see whether you were protected, you would have assumed that you were not protected, wouldn't you? A. No, I would have assumed I was protected.

"Q. I see. You would certainly have known that she was not protected? A. If I had moved over in her seat, I would have known that, yes.

"Q. Why would you have assumed that you were protected? A. Well, everything but the batter's head was behind the wire, and on your theory— of course, if a man hit a ball up like that, I might not, but the normal hitting range would be behind the wire from me."

"A. * * * if you are sitting out where you can see the batter without the screen in front of you, you know you are in an unprotected area."

There was considerable testimony to the effect that the area in which appellees sat was a very dangerous place to be without screen wire protection despite which fact the evidence is undisputed that many fans prefer not to sit behind screen wire.

There is also considerable evidence regarding the antics or vagaries of a batted ball.

Appellees concede that if Mrs. Jones had knowingly and voluntarily sat in an unprotected seat that they could not recover saying "they readily recognize that the courts universally have held that they are barred from recovery because, the courts have, as a matter of law, charged a litigant with knowledge that it is dangerous to witness a baseball game unprotected from thrown and batted balls * * *" Further than this they say the Texas courts have not

gone and refer to Keys v. Alamo City Baseball Co., Tex.Civ.App., San Antonio, 150 S.W.2d 368; and Williams v. Houston Baseball Ass'n, Tex.Civ.App., Galveston, 154 S.W.2d 874, writ dism.

Appellees rely upon the fact that Mrs. Jones did not knowingly and voluntarily sit in an unprotected seat. That this is true does not establish liability of appellant because the failure of Mrs. Jones to realize that she was not sitting behind the screen was attributable to her neglect in not observing the obvious.

■■■ The seats which were protected by screen as well as those which were not were plainly discernible. There was no trap, no concealment and no condition present which was not open and obvious and subject to ordinary observation. Under these circumstances the rule is that a business invitee may not recover for a condition as well known to him as it is to his invitor and neither may he impose liability on the proprietor by failing and neglecting to see and observe that which is open and obvious to a person in possession of his faculties. 2 Restatement, Law of Torts, Sec. 343; Houston Nat. Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374.

This rule has been applied many times in cases where spectators have been hit by a batted or thrown ball while attending baseball games. Hudson v. Kansas City Baseball Club, 349 Mo. 1215, 164 S.W.2d 318, annotated in 142 A.L.R. p. 868, where many authorities are reviewed.

A later case by the same Court is Anderson v. Kansas City Baseball Club, Mo.Sup., 1950, 231 S.W.2d 170, 172 from which we quote:

"Where a baseball game is conducted under the usual conditions customarily prevailing in baseball parks, it is not necessary that all seats be screened against the hazard of driven balls. The obligation to exercise ordinary care to provide a place which is reasonably safe for spectators is fulfilled when those portions of the stands which are most frequently subject to

the hazard of foul balls are screened and when screened seats are provided for as many as may reasonably be expected to desire to use them. Hudson v. Kansas City Baseball Club. supra; Brummerhoff v. St. Louis Nat. Baseball Club, Mo.App., 149 S.W.2d 382; Crane v. Kansas City Baseball & Exhibition Co., 168 Mo.App. 301, 153 S. W. 1076; Keys v. Alamo City Baseball Co., Tex.Civ.App., 150 S.W.2d 368; Brisson v. Minneapolis Baseball & Athletic Ass'n, 185 Minn. 507, 240 N. W. 903. Indeed, it has been recognized that many spectators prefer seats which are not screened in order that they may have a better view of the game. Grimes v. American League Baseball Co., Mo.App., 78 S.W.2d 520, 523; Keys v. Alamo City Baseball Co., Tex.Civ.App., 150 S.W.2d 368, 370. All of the cases cited here and many others which are cited in Hudson v. Kansas City Baseball Club, supra, emphasize that when due care has been exercised to provide a reasonable number of screened seats, there remains a hazard that spectators in unscreened seats may be struck and injured by balls which are fouled or otherwise driven into the stands. This risk is a necessary and inherent part of the game and remains after ordinary care has been exercised to provide the spectators with seats which are reasonably safe. It is a risk which is assumed by the spectators because it remains after due care has been exercised and is not the result of negligence on the part of the baseball club. Hudson v. Kansas City Baseball Club, supra; Edling v. Kansas City Baseball & Exhibition Co., 181 Mo.App. 327, 168 S.W. 908, 910. It is clearly not an unreasonable risk to spectators which imposes a duty to warn. 2 Restatement, Law of Torts, Sec. 343.

\* \* \* \* \* \*

"Plaintiff argues that she did not assume the risks inherent in sitting in an unscreened area of the park because defendant gave her an assurance of safety. As we have pointed out, the risks and hazards involved did not result from defendant's negligence but were obvious and inherent in the game itself. We do not believe that plaintiff's alleged inquiry as to the safety of an unscreened seat imposed upon defendant a duty to warn which did not otherwise exist."

These rules of law, insofar as they apply to persons familiar with the game of baseball as were appellees, prevail not only in Texas but in every other jurisdiction where similar cases have arisen so far as we have been able to ascertain. Appellees cite no baseball cases as affirmative authority in their behalf.

Appellant was entitled to an instructed verdict because no primary negligence on his part is shown by the evidence and because Mrs. Jones was negligent in failing to observe that she was not protected by screen wire.

The judgment of the trial court is reversed and judgment is here rendered that appellees take nothing by their suit.

Reversed and rendered.