166 So.2d 647 (1964)
John A. COLCLOUGH, M.D.
v.
ORLEANS PARISH SCHOOL BOARD, Rene C. Petz, Bert S. Titus, Mrs. Naomi G. Smith, Geoffrey A. Richard, John J. Horvath, and Board of Commissioners of New Orleans City Park Improvement Association.
No. 1507.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1964.
Comiskey & Schaff, Val A. Schaff, III, New Orleans, for plaintiff and appellant.
Samuel I. Rosenberg, New Orleans, for Orleans Parish School Bd., Rene C. Petz, Bert S. Titus and John J. Horvath, defendants and appellees.
Lemle & Kelleher, Carl J. Schumacher, Jr., David L. Campbell, and R. M. Troy, Jr., New Orleans, for Mrs. Naomi G. Smith, defendant and appellee.
Reuter, Reuter & Schott, Arthur C. Reuter, New Orleans, for Geoffrey A. Richard, defendant and appellee.
Sessions, Fishman, Rosenson & Snellings and William P. Rutledge, New Orleans, for Board of Commrs. of City Park Improvement Assn. and United States Fidelity & Guaranty Co., defendants and appellees.
Before McBRIDE, REGAN and CHASEZ, JJ.
McBRIDE, Judge.
Plaintiff's suit was dismissed on defendants' exceptions of no cause or right of action and plaintiff has appealed. The issue on appeal is one of law predicated upon the allegations of fact in plaintiff's *648 two petitions which, for the purpose of determining the exceptions, must be taken as true. Plaintiff's well-pleaded allegations of fact are these:
On February 15, 1963, he went to City Park in New Orleans to watch his son, who was a member of a local public high school football team, participate in the last scrimmage of the then spring practice season. The scrimmage took place in an open area of City Park which had neither markings of the gridiron boundary lines nor seats or accommodations for spectators. There were no barricades around the playing field.
Besides plaintiff, other spectators numbering 25 to 30, congregated about the area in which the practice was taking place; plaintiff positioned himself and stood about 10 to 12 feet from what would be one of the side boundary lines of the field. After plaintiff had been observing the players for about 20 minutes, a play was called whereby one of the participants was to carry the ball around left end, and in the execution thereof, five of the young athletes ran in the direction in which the spectators were standing. The play began on the far side of the field from where plaintiff and the others were gathered. The young players in their zeal overran the unmarked boundary of the playing field and the 10-yard measuring chain and dashed into plaintiff knocking him to the ground and causing the alleged injuries. There are no allegations going to show that the action of the boys in running into plaintiff was malicious or wilful, and it is easy to glean from the petitions that the occurrence was purely of an accidental nature.
Plaintiff sued for damages interpleading as solidary defendants Orleans Parish School Board (see Act 57 of 1963), Board of Commissioners of the New Orleans City Park Improvement Association (and its liability insurer) and the parents of the players who allegedly ran into plaintiff, said defendants being charged with various acts of negligence. All defendants filed the exceptions which were maintained below, most of which are grounded on the fact of plaintiff having voluntarily placed himself in an unsafe place exposed to danger and in assuming the risk of being injured under the circumstances.
The established jurisprudence is to the effect that as a general rule contributory negligence, which is a special defense, must be pleaded specially and be supported by evidence; but if the allegations of fact made by the plaintiff clearly disclose his contributory negligence, the issue may be raised by an exception of no cause of action. Louisiana Power & Light Company v. Saia, 188 La. 358, 177 So. 238 (and cases therein cited); Odum v. Newstadt's Shoe Stores, La.App., 194 So. 81; Arata v. Orleans Capitol Stores, Inc., 219 La. 1045, 55 So.2d 239.
In the last cited case, the Supreme Court also said:
"It is also well settled, however, with respect to such issue, that inasmuch as a plaintiff is not required to negative contributory negligence in his petition the exception should not be maintained unless the alleged facts establish affirmatively the existence of negligence on his part proximately causing the accident. To warrant the upholding of the exception, in other words, it is necessary that the allegations exclude every reasonable hypothesis other than that the proximate cause of the accident was negligence of the plaintiff. Gibbs v. Illinois Central Railroad Co., 169 La. 450, 125 So. 445; Burmaster v. Texas Pacific-Missouri Pacific Terminal Railroad of New Orleans, La.App., 174 So. 135; Pittman v. Gifford-Hill & Co., Inc., La.App., 188 So. 470; West v. Ray, 210 La. 25, 26 So.2d 221; Dodge v. Bituminous Casualty Corporation, 214 La. 1031, 39 So.2d 720."
The trial judge assigned the following brief reasons for judgment:
"Where plaintiff, a doctor, who, on invitation of his son, one of the football *649 players on a high school team, goes to City Park to watch his son's team at football scrimmage, positions himself on or at the side line of the playing field, a position of known or obviously apparent danger, and is injured when five boys engaged in an end run play in ordinary course of playing the game, run out of bounds into plaintiff injuring him, plaintiff has no right of recovery as he assumed the risk. See Lorino vs. New Orleans Baseball & Amusement Co., Inc., 16 La.App. 95, 133 So. 408 (1931); Jones v. Alexandria Baseball Ass'n, Inc., 50 So.2d 93 (La.App.1951)."
We heartily concur. The two cases cited by our brother below involved actions for damages by spectators at baseball games. In Lorino v. New Orleans Baseball & Amusement Co., Inc., the late Court of Appeal for the Parish of Orleans in denying recovery to plaintiff said:
"It is well known, as the evidence demonstrates, that it is not possible, at baseball games, for the ball to be kept at all times within the confines of the playing field. Errors must inevitably occur and foul balls must frequently be knocked, and on any such occasion there is danger that the ball may enter that portion of the park occupied by the spectators. Those who fear such dangers may, as we have said, secure protection in those seats in front of which screens are erected, and which screens extend from the ground to the roof and afford complete safety. Those who do not elect to take advantage of such protection assume the risks of such obvious dangers."
The late Second Circuit Court of Appeal in Jones v. Alexandria Baseball Ass'n, Inc., maintained an exception of no right or cause of action based on the ground of contributory negligence against plaintiff's demands for damages for injuries suffered while he was a spectator at a baseball game, saying:
"* * * It is only reasonable to consider that almost all sports events and exhibitions comprehend certain risks and elements of danger to spectators. Those who patronize such events must assume the risk of injury unless carelessness or negligence with respect to the neglect or reasonable precautions is established."
Plaintiff, according to his counsel, is a former college football player and he should have known that there was more than a passing likelihood of being injured while standing in such close proximity to the edge of the playing field. The distance between the edge of the field and the spot where plaintiff stood could have been traversed in two or three strides by a fast-moving player.
Football, as it is played in America, is a rough and rugged game requiring much brawn and physical effort and contact on the part of the players. Strategy demands on some offensive plays that the ball carrier intentionally run out of bounds; on some plays defensive players force the ball carrier over the boundary line so that the ball will become "dead" and the particular play ended. It is knowledge common to all who have watched football games, or viewed such games on television, that ofttimes as a result of momentum generated in executing plays, players cannot avoid running beyond the limits of the playing field and as a result accidents may occur. Many times have we seen photographers and others who ventured too close to the side lines knocked head over heels by players overrunning the boundary. In many cases, too, we have seen momentum carry football players headlong into the team "benches" paralleling each side of the field about mid-field and scatter those occupying them. Such benches are located at a greater distance from the playing field than was plaintiff. We have also observed the linesmen (those who handle the 10-yard measuring chain) scurry for safety when plays appear headed in their direction.
Plaintiff was cognizant of such conditions and knowingly placed himself in a position *650 of danger and assumed the risk of injury, and whatever damages he suffered can be said to be due to his contributory negligence. There is no reasonable hypothesis that he was free from negligence. The exceptions are meritorious and were properly maintained.
The judgment appealed from is affirmed.
Affirmed.