Karen **FRIEDMAN** and Robert
Friedman, Appellants,

v.

**HOUSTON SPORTS
ASSOCIATION, Appellee.**

No. 01–85–0995–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

March 5, 1987.

Rehearing Overruled May 28, 1987.

Leonard C. Kahn Kahn & Maierson, P.C., Stephanie E. Shapiro Kahn & Maierson, P.C., William MacGann (atty. ad litem, for Karen Friedman), Houston, for appellants.

Reagan Wm. Simpson Fulbright & Jaworski Houston, for appellee.

Before DUNN, SAM BASS and COHEN, JJ.

## OPINION

DUNN, Justice.

This is an appeal from a judgment n.o.v. involving a baseball injury at the Astrodome. The jury found that the appellee was negligent in failing to warn of the danger of being struck by a baseball behind the first base dugout, and that this was the proximate cause of Karen Friedman's injury. The trial judge granted the appellee's motion for judgment n.o.v. with respect to these two findings. The jury also found that Karen Friedman and her father, Robert Friedman, were not negligent, that the plexiglass cover of the first base dugout was not an attractive nuisance, and that the appellee was not negligent in failing to place protection in front of the first base dugout. The jury awarded Karen Friedman $50,000 in actual damages, and her father $5,000 in actual damages. The jury also awarded $125,000 in punitive damages.

The record reveals that 11–year-old Karen Friedman attended the Astros game on July 14, 1978. Karen was seated with her father and two family friends, Melvin Weiss and his daughter Penny. Karen and her father did not elect to sit in the screened area behind home plate that the appellee had provided for the protection of spectators. The record indicates that seats were available in this area. Instead, the appellants chose to sit several rows behind the first base dugout. In the bottom of the ninth inning, Karen and Penny left their seats, and walked down behind the first base dugout. Karen was hit near her right eye by a line-drive foul ball.

In the appellants' first, second, and third points of error, they argue that there was sufficient evidence to uphold the jury's verdict that the appellee was negligent in failing to warn of the danger of being struck by a baseball behind the first base dugout, and that this negligence was the proximate cause of Karen's injury. The trial court granted the appellee's motion for judgment n.o.v., but did not specify its reasons. It is, therefore, the appellants' burden to discredit each ground in the appellee's motion. *Monk v. Dallas Brake & Clutch Service Co.*, 697 S.W.2d 780, 783 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

One of the grounds asserted by the appellee in its motion for a judgment n.o.v. is that there is no duty on the part of the owner of a baseball stadium to warn spectators of the open and obvious risk of injury from baseballs. This proposition is well settled as a matter of law in Texas. The leading Texas case on baseball spectator injuries is *McNiel v. Fort Worth Baseball Club*, 268 S.W.2d 244 (Tex.Civ.App.—Fort Worth 1954, writ ref'd). *McNiel* established the stadium owner's limited duty to provide screened seats for all those who wish to sit behind a screen. *Id.* at 246. *McNiel* did not impose a duty on a stadium owner to warn about foul balls. Other Texas cases have also declined to impose this duty on stadium owners. *See Knebel v. Jones*, 266 S.W.2d 470 (Tex.Civ.App.—Austin 1954, writ ref'd n.r.e.); *Williams v. Houston Baseball Association*, 154 S.W.2d

874 (Tex.Civ.App.—Galveston 1941, no writ); *Keys v. Alamo City Baseball Co.,* 150 S.W.2d 368 (Tex.Civ.App.—San Antonio 1941, no writ).

In fact, the court in *Keys* faced a situation very similar to this case. The jury in *Keys* found that the operator of the baseball park was negligent in failing to warn the plaintiff of the dangers incident to sitting in the unscreened area. The appeals court held that the trial court did not abuse its discretion in disregarding the jury finding. The court stated that

> [i]t would have been absurd, and no doubt would have been resented by many patrons, if the ticket seller, or other employees, had warned each person entering the park that he or she would be imperiled by vagrant baseballs in unscreened areas.

*Keys,* 150 S.W.2d at 371.

■ These cases do not eliminate the stadium owner's duty to exercise reasonable care under the circumstances to protect patrons against injury. However, they define that duty so that once the stadium owner has provided "adequately screened seats" for *all* those desiring them, the stadium owner has fulfilled its duty of care as a matter of law. *McNiel,* 268 S.W.2d at 246.

The appellants argue that these Texas cases no longer apply because of the present comparative negligence statute. Tex.Civ.Prac. & Rem.Code Ann. §§ 33.001–33.017 (Vernon 1986). The appellants misconstrue the purpose of comparative negligence. Comparative negligence does not create a duty; it simply allows partial recovery for a plaintiff who is no more than 50% at fault. The appellants in this case still have the burden to prove that the appellee owed them a duty to warn.

New York, a comparative negligence state, recently adopted the majority rule of limited liability for a baseball stadium owner. *Akins v. Glens Falls City School District,* 53 N.Y.2d 325, 424 N.E.2d 531, 441 N.Y.S.2d 644 (1981). The New York Court of Appeals stated that "the critical question becomes what amount of screening must be provided by an owner of a baseball

field before it will be found to have discharged its duty of care to its spectators". *Akins,* 424 N.E.2d at 533. The court held that the owner was required to screen the most dangerous section of the field, the area behind home plate, and the number of protected seats so provided must be sufficient in number to accommodate the spectators who may reasonably be anticipated to desire protected seats on an ordinary occasion. *Id.* Once this is done, the proprietor has fulfilled its duty of care imposed by law, and cannot be liable in negligence. *Id.* at 534.

California has also abolished assumption of the risk and has adopted comparative negligence, while at the same time adhering to the traditional rule for baseball spectator injuries. *Rudnick v. Golden West Broadcasters,* 156 Cal.App.3d 793, 202 Cal. Rptr. 900 (1984). The California court stated that the stadium owner had only the limited duty to provide screened seats "for as many fans as may be reasonably expected to call for them on any ordinary occasion." *Rudnick,* 202 Cal.Rptr. at 901. If this is done, the stadium owner has "fulfilled its limited duty to spectators as a matter of law, and is entitled to summary judgment ... [T]he chance to apprehend a misdirected baseball is as much a part of the game as the seventh inning stretch or peanuts and Cracker Jack". *Id.* 202 Cal. Rptr. at 905.

Virtually all jurisdictions have adopted the limited duty of stadium owners to screen certain seats, and have held that where there is a screened area for the protection of spectators, and a fan elects to sit in an unscreened area, liability will be precluded even though injury arises. *See Maytnier v. Rush,* 80 Ill.App.2d 336, 225 N.E.2d 83 (1967); *Sprunger v. East Noble School Corp.,* 495 N.E.2d 250 (Ind.Ct.App. 1986); *Colclough v. Orleans Parish School Board,* 166 So.2d 647 (La.Ct.App. 1964); *Brisson v. Minneapolis Baseball & Athletic Association,* 185 Minn. 507, 240 N.W. 903 (1932); *Anderson v. Kansas City Baseball Club,* 231 S.W.2d 170 (Mo.1950); *McFatridge v. Harlem Globe Trotters,* 69 N.M. 271, 365 P.2d 918 (1961) (apparently

recognizing the duty to screen the most dangerous area of the park); *Erickson v. Lexington Baseball Club*, 233 N.C. 627, 65 S.E.2d 140 (1951); *Cincinnati Baseball Club Co. v. Eno*, 112 Ohio St. 175, 147 N.E. 86 (1925); *Lang v. Amateur Softball Association*, 520 P.2d 659 (Okla.1974) (abiding by *Hull v. Oklahoma City Baseball Co.*, 196 Okla. 40, 163 P.2d 982 (1945)); *Jones v. Three Rivers Management Corp.*, 483 Pa. 75, 394 A.2d 546 (1978) (no liability for "inherent" risks of the game); *Schentzel v. Philadelphia National League Club*, 173 Pa.Super. 179, 96 A.2d 181 (1953) (no liability if stadium has a screen of customary dimensions); *Hamilton v. Salt Lake City Corp.*, 120 Utah 647, 237 P.2d 841 (1951); *Perry v. Seattle School District*, 66 Wash.2d 800, 405 P.2d 589 (1965).

The appellants urge this Court to adopt the lone case that supports a duty to warn, *Falkner v. John E. Fetzer, Inc.*, 113 Mich. App. 500, 317 N.W.2d 337 (1982); *see* Annot., 91 A.L.R.3d 24 (1979 & Supp.1985). We decline this offer. Further, we note that even in *Falkner,* the court stated that it "is a generally accepted proposition that there is no duty to warn of the risk of being hit by batted balls when attending a baseball game, because the risk is obvious." *Falkner,* 317 N.W.2d at 339. This proposition was adopted by the court in *Keys,* which held that the general dangers inherent in baseball are part of the "universal common knowledge." *Keys,* 150 S.W.2d at 371.

■ We find that a stadium owner has no duty to warn spectators of the danger of foul balls. The stadium owner's duty is to provide "adequately screened seats" for all those desiring them. The appellants' first, second, and third points of error are overruled.

In point of error four, the appellants challenge the jury's finding that the appellee was not negligent in failing to place protection behind the first base dugout. In point of error five, the appellants challenge the jury's finding that the plexiglass top of the first base dugout was not an attractive nuisance. In both of these points of error, the appellants confuse rendition points and new trial points. They seek a judgment as a matter of law, which is a rendition point. In addition, they present a new trial point by alleging that the jury acted against the great weight and preponderance of the evidence.

■ Regardless, neither of these points were properly preserved for review. A point in a motion for new trial is a prerequisite to a complaint on appeal that the jury finding is against the overwhelming weight of the evidence. Tex.R.Civ.P. 324(b)(3). The appellants did not file a motion for new trial. The proper predicate for a "no evidence" point is either a motion for instructed verdict, objection to the submission of a vital fact issue, motion to disregard the jury finding, motion for judgment non obstante veredicto, or motion for new trial that distinctly raises the "no evidence" point. *Reed v. Israel National Oil Co.,* 681 S.W.2d 228, 233 (Tex.App.—Houston [1st Dist.] 1984, no writ). The appellants did not file any of these motions. In the appellants' motion for the court to reconsider its granting of the judgment n.o.v., the only issue raised is the duty to warn of foul balls.

We hold that the appellants have waived both their "no evidence" and insufficient evidence points of error. The appellants' fourth and fifth points of error are overruled.

The judgment of the trial court is affirmed.

COHEN, J., concurring.

COHEN, Justice, concurring.

American courts have refused, almost without exception, to allow sports spectators to recover for injuries caused by the open and obvious risks of the game. This rule is nowhere more clear than in baseball cases. The holdings are made as a matter of law on one or more of the following grounds: (1) the defendant had no duty to warn or protect the plaintiff from an open and obvious danger; (2) the plaintiff assumed the risk that was, or should have been, obvious to him; and (3) the plaintiff

was guilty of contributory negligence by placing himself in a dangerous location.

Our courts have held that the danger from foul balls at baseball games is so well known that it may be judicially noticed. In *Schentzel v. Philadelphia National League Club*, 173 Pa.Super. 179, 96 A.2d 181 (1953), the rule was invoked to bar recovery even to a woman attending her first game. In a classic statement, the court wrote:

> Plaintiff was a woman 47 years of age. There is nothing whatever in the record to support an inference that she was of inferior intelligence, that she had subnormal perception, or that she led a cloistered life. Consequently she must be presumed to be cognizant of the 'neighborhood knowledge' with which individuals living in organized society are normally equipped.

The court went on to state what was included within the term "neighborhood knowledge":

> We think the frequency with which foul balls go astray, alight in the grandstand or fields, and are sometimes caught and retained by onlookers at baseball games is a matter of such common everyday practical knowledge as to be a subject of judicial notice. It strains our collective imagination to visualize the situation of a wife of a man obviously interested in the game, whose children view the games on the home television set, and who lives in a metropolitan community, so far removed from that knowledge as not to be chargeable with it.

*Id.*, 96 A.2d at 186; *accord Perry v. Seattle School District*, 66 Wash.2d 800, 405 P.2d 589 (1965) (plaintiff was a 67–year-old female attending her second game); *Keys v. Alamo City Baseball Co.*, 150 S.W.2d 368 (Tex.Civ.App.—San Antonio 1941, no writ) (plaintiff, a 42–year-old female attending her second game, held bound by "universal common knowledge").

Thus, adult plaintiffs must lose when their injuries result from the game's obvious hazards. As the majority states, this is also the rule in Texas. *McNiel v. Fort Worth Baseball Club*, 268 S.W.2d 244 (Tex. Civ.App.—Fort Worth 1954, writ ref'd). It may even be a good rule, when applied to adults. I am not convinced, however, that it is the rule, and certainly not a good rule, to apply this principle, as a matter of law, in a case involving an 11–year-old child as a plaintiff. Some 11–year-olds will know the dangers of baseball, and some will not. I cannot say, as a matter of law in every case and without exception, that those 11–year-olds who do not know of baseball's dangers lack the minimum level of "neighborhood knowledge" that society demands. In my opinion, a landowner who invites an *unsupervised* 11–year-old child to its premises should not be surprised if a court imposes liability upon finding that the child is less aware of some particular danger, and thus more in need of warning, than its parents or older siblings. Juries are well suited to make such distinctions, and we owe considerable deference to their verdicts when reviewing judgments n.o.v.

I nevertheless join the court's decision because I believe that any failure to warn this 11–year-old was excused, since she was accompanied by an adult responsible for her welfare. The law holds that there is no duty to warn adults. When a young minor enters a premises with a responsible adult, the landowner has a right to rely on the adult to protect the minor from dangers that are within the adult's "neighborhood knowledge." Thus, the neighborhood knowledge that the law requires of Robert Friedman is imputed through him to Karen Friedman. In fact, Karen was generally warned about baseballs on the night of the accident by Melvin Weiss, and was told not to try to catch foul balls and to be careful when she approached the dugout.

The jury refused to find that Robert Friedman was negligent in failing to warn Karen about foul balls, in selecting seats behind the dugout, or in allowing Karen to leave her assigned seat. Yet Texas law holds, notwithstanding the jury's verdict, that Robert Friedman assumed this risk for Karen by allowing her to be at the place where she was injured. Although uncomfortable with this rule, as an intermediate

appellate court justice, I am bound to follow it.

This does not mean that a duty to warn could never arise. An unsupervised 11-year-old invited into the stadium, despite his lack of "neighborhood knowledge," might be owed a warning, although his parents might be negligent for allowing him to attend without supervision.

With these reservations, I concur.