**Opinion issued October 8, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00874-CV

_____

## CLAY GIVENS, Appellant

## V.

## ALL PRO COURTS, LLC D/B/A COURT BUILDER OF HOUSTON AND CHRISTOPHER WALKER, Appellees

On Appeal from the 80th Judicial District Court
Harris County, Texas
Trial Court Case No. 2010-01121

## MEMORANDUM OPINION

Clay Givens appeals from a judgment notwithstanding the verdict in a personal injury lawsuit. The jury found that the negligence of All Pro Courts, LLC

d/b/a Court Builder of Houston[1] caused Givens's injuries and awarded damages. The trial court entered a JNOV in favor of All Pro Courts, declaring that Givens take nothing on his negligence action. In one issue, Givens argues that the trial court erred in granting the JNOV because there was legally sufficient evidence to support the verdict. We reverse and remand.

## Background

Clay Givens sustained an injury to his right foot while installing a driveway basketball court for All Pro Courts, a tennis and basketball court installation company. Clay is the former owner of All Pro Courts; he sold the company to Christopher Walker. After the sale, Clay Givens continued to work with All Pro Courts as an independent contractor, primarily working in sales. Clay's son, Eric Givens, was the office manager for All Pro Courts at the time of Clay's injury.

On the day Clay sustained his injury, Walker asked Eric to install a basketball court because the independent contractor who normally did installations was unavailable and All Pro Courts "needed to collect the check" and get "the job completed." Eric asked Clay to help install the court.

A company trailer was loaded already with the equipment. Clay attached the trailer to his vehicle and drove to the site. Eric unloaded most of the equipment

---

[1] Walker purports to be an appellee along with All Pro Courts; however, Walker's negligence was not submitted to the jury and no judgment was entered against or in favor of him as a result of the underlying JNOV. Accordingly, our opinion relates only to All Pro Courts.

as Clay worked with the rebounders and checked positioning. Then they worked together to unload the large steel pole to which the basketball goal would attach. The pole was over 10 feet long and 6 inches square with a black powder-coat finish. It had a base plate welded to one end that was about 15 inches square and almost half an inch thick. The entire piece (pole and baseplate) weighed over 200 pounds.

To unload the pole, Eric entered the trailer as Clay waited on the ground. They each picked up one end of the pole and began to remove it from the trailer, with Clay holding the base plate end. When Eric neared the end of the trailer, the pole fell from his hands. There is evidence that Eric lost his grip and tripped, though it is unclear which event caused the other. Eric testified that he "tripped at—as I was dropping the pole . . . I was trying to do everything I could to catch the pole and as I started to lose my grip." The pole landed on a board placed vertically across the back of the trailer. The impact caused the pole to vibrate which, in turn, made Clay lose his grip.

Clay managed to move his left foot almost completely out of the way, but the base plate landed squarely on his right foot. The first metatarsal bone in his right foot had a complete break, which required surgery and left Clay with permanent nerve damage.

Clay was treated by a podiatrist, Dr. Greg Tepper, who surgically repaired Clay's right foot by placing two screws into the bone to allow the two severed ends of the first metatarsal to reconnect and heal. After the surgery, Tepper instructed Clay to stay off the foot for eight weeks and then to wear a boot for another month. The total recovery time was three months from surgery. After about four months, Clay returned to Dr. Tepper complaining of tingling and numbness in his foot. Clay then visited an orthopedist, Dr. Popeney, who told him he had irreparable nerve damage.

Clay brought a negligence claim against All Pro Courts and Walker. The court's charge asked the jury to determine whether the negligence of All Pro Courts or Clay or both caused Clay's injuries and, if so, to apportion a percentage of responsibility to each. The jury found both All Pro Courts and Clay negligent, and it apportioned 90% of the responsibility to All Pro Courts and 10% to Clay. The jury awarded Clay $109,000 in damages. All Pro Courts moved for judgment notwithstanding the verdict on the ground that Clay failed to present evidence that it was negligent. The trial court granted the motion and rendered judgment that Clay take nothing on his claims against All Pro Courts. Clay appeals.

**Standard of Review**

A trial court may disregard a jury's verdict and render a JNOV if there is no evidence to support the jury's findings or if a directed verdict would have been proper. *Brown v. Bank of Galveston*, 963 S.W.2d 511, 513 (Tex. 1998). We review the trial court's ruling on a motion for JNOV under a legal-sufficiency standard, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)); *Whitney Nat'l Bank v. Baker*, 122 S.W.3d 204, 207 (Tex. App.—Houston [1st Dist.] 2003, no pet.). All Pro Courts was entitled to a judgment notwithstanding the verdict only if the record shows: (1) a complete lack of evidence of a vital fact; (2) the trial court is barred by the rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *City of Keller*, 168 S.W.3d at 810; *Requena v. Otis Elevator Co.*, 305 S.W.3d 156, 162 (Tex. App.—Houston [1st Dist.] 2009, no pet.). If some evidence supports the jury's verdict, the reviewing court must reverse and render judgment on the verdict. *See M.N. Dannenbaum, Inc. v. Brummerhop*, 840 S.W.2d 624, 628–29 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

5

**The trial court erred in granting JNOV**

In order to recover on a negligence claim, the plaintiff must prove: (1) the defendant owed a legal duty to the plaintiff; (2) the defendant breached that duty; and (3) the breach proximately caused the plaintiff's injury. *See Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). Because the trial court granted the JNOV without specifying a reason, Clay must show that each element of negligence is supported by more than a scintilla of evidence. *Friedman v. Houston Sports Ass'n*, 731 S.W.2d 572, 573 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.).

The parties agree that Clay was an independent contractor when he assisted Eric in unloading the trailer and that Eric had a duty to use reasonable care while removing the pole from the trailer to avoid injuring Clay in the process. Accordingly the duty element is not at issue. We turn to the remaining elements.

**A.     There is legally sufficient evidence All Pro Courts failed to use reasonable care**

All Pro Courts states that one of the "major questions in this trial was why Eric Givens dropped the pole . . . did Eric drop the pole because it was heavy, or because he stumbled?" All Pro Courts argues that the testimony of Clay indicates Eric stumbled, which according to All Pro Courts, would negate a finding of negligence.

6

The jury was instructed that negligence involves the failure to use reasonable care which is what a person of ordinary prudence would have done or would not have done under similar circumstances. *Colvin v. Red Steel Co.*, 682 S.W.2d 243, 245 (Tex. 1984); *Caldwell v. Curioni*, 125 S.W.3d 784, 793 (Tex. App—Dallas 2004, pet. denied).

Eric, an office manager, was installing this court because the independent contractor who handles most installations was not available. The jury was told that Eric was not a particularly strong person and that he and Clay usually limited their work to non-physical tasks like sales and office management. Further, the All Pro Courts's owner, Walker, testified that it is "a bad idea" to have sales workers doing installations.

There was evidence that the pole weighed over 200 pounds. Eric testified that he attempted to unload the pole even though it was "heavy" to him and that he dropped it because he "lost his grip" on it:

Q:     What caused you to lose your end of the pole?

A:     I was walking with the pole and just slipped out of my hands. I lost my grip.

Q:     Did you trip?

A:     I tripped at—as I was dropping the pole, yes, ma'am. I was trying to—I was trying to do everything I could to catch the pole and as I started to lose my grip. So subsequently slipped and tripped and dropped the pole.

Accordingly, there was some evidence that Eric dropped the pole first and that he did so because it was too heavy for him. Witnesses further testified that using carrying straps and wearing work gloves could have avoided the injury. Finally, Eric testified that he was "100 percent responsible" for the accident.

The degree of difficulty involved in moving heavy objects such as equipment and furniture is within the common knowledge of jurors. They, likewise, are aware of the risks involved. Expert testimony was not necessary; the jurors were permitted to rely on their own past experiences and everyday knowledge to determine whether All Pro Courts's conduct breached the duty of reasonable care. *See GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 620 (Tex. 1999) (holding that issues involving general knowledge and experience is within province of jury to decide).

There is more than a scintilla of evidence on which the jury could find that All Pro Courts failed to use reasonable care unloading the heavy equipment in this manner.

**C.    There is legally sufficient evidence that All Pro Courts's negligence proximately caused Clay's injury**

Proximate cause, has two components: (1) cause in fact and (2) foreseeability. *W. Invs. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). The test for cause in fact (also known as but-for causation) is whether the breach was a substantial factor in bringing about the injury and whether the injury would not

8

have occurred without the breach. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 774 (Tex. 2010). If the injury would have occurred without the breach, there is no but-for causation. Cause in fact must be proven by either direct or circumstantial evidence and not by conjecture or speculation. *See Excel Corp. v. Apodaca*, 81 S.W.3d 817, 820 (Tex. 2002). The evidence presented must allow the jury to determine that it is reasonably probable that without the breach, the accident would not have occurred. *See Lenger v. Physician's Gen. Hosp., Inc.*, 455 S.W.2d 703, 706 (Tex. 1970).

There was more than a scintilla of evidence to support the jury's conclusion that All Pro Courts's negligence was the cause in fact of Clay's injuries. Eric testified that he lost his grip on the pole, dropped the pole, and then tripped while trying to regain his grip. He further testified that he dropped the pole because it was a "heavy pole." Finally, he testified he was "100 percent responsible" for the injury. This is more than a scintilla of evidence to support a reasonable jury's determination that Eric's negligence was the cause in fact of Clay's injury.

We next review whether there is evidence that the injury was a foreseeable result of the breach. To prove this element, the plaintiff must show that a person of ordinary intelligence should have foreseen that damage could result from the breach. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992) (citing *Nixon v. Mr. Prop. Mgmt.*, 690 S.W.2d 546, 551 (Tex. 1985)).

The witnesses testified that the pole was 10 feet long, 6 inches square, made of steel, and weighed over 200 pounds. Eric and Clay—who did not typically handle installations—were unloading this heavy equipment off of a raised trailer without the assistance of any other people, tools, or equipment. When Eric dropped the pole, it landed on Clay's foot and caused significant injury. There is more than a scintilla of evidence in support of the jury's conclusion that it was foreseeable an injury would occur if a heavy pole was dropped while being moved.  In other words, this evidence supports the jury's conclusion that a reasonable person would have foreseen an injury resulting from this activity.

## Conclusion

We reverse the trial court's grant of judgment notwithstanding the verdict and remand the cause for further proceedings to calculate pre-judgment interest, post-judgment interest, and costs, if any.


Harvey Brown
Justice

Panel consists of Justices Jennings, Sharp, and Brown.

10