BENEJAM v DETROIT TIGERS, INC

Docket No. 217727. Submitted April 11, 2001, at Detroit. Decided July 10, 2001, at 9:00 A.M. Leave to appeal sought.

Alyssia M. Benejam, a minor, by her next friends, Ysabel and Robert Benejam, and Ysabel and Robert Benejam, for themselves, brought an action in the Wayne Circuit Court against Detroit Tigers, Inc., after Alyssia sustained injury at the defendant's baseball stadium while there to watch a baseball game from a seat near the third base line. A fragment from a hitter's broken bat had curved around a protective screen behind home plate and struck the minor. The plaintiffs alleged that the defendant breached its duty to maintain premises safe for invitees by not having a longer protective screen and by providing inadequate warnings regarding the possibility of injury to spectators from projectiles from the playing field. The court, Paul S. Teranes, J., entered judgment on a jury verdict and award of damages for the plaintiffs after denying motions by the defendant for summary disposition, a directed verdict, and judgment notwithstanding the verdict. In support of its motions, the defendant had argued for the adoption of the "limited duty" rule with respect to a baseball stadium owner's liability for injury to a spectator caused by a projectile from the playing field. The defendant appealed.

The Court of Appeals *held*:

1. Under the limited duty rule, a baseball stadium owner cannot be held liable for injury to a spectator caused by a projectile from the playing field if the owner has satisfied the limited duty of erecting a screen that protects the area behind home plate and providing a number of seats in this area sufficient to meet the ordinary demand for protected seats. The rule is adopted in Michigan because it represents the right balance between the inherent risk of being hit by a projectile from the playing field and the inherent value in having most seats unprotected by a screen to facilitate intimate involvement with the game. The limited duty rule does not ignore or abrogate usual premises liability principles. Instead, it identifies the duty of a baseball stadium owner with greater specificity than the usual "ordinary care/reasonably safe" standard provides. The limited duty rule comports more nearly with the reality

that attending a baseball game includes the risk of being hit by a projectile from the playing field than would usual invitor-invitee principles of liability, and leaves the baseball stadium owner free, without fear of liability, to accommodate the majority of fans who prefer unobstructed and uninsulated contact with the game. In this case, where the evidence indicates that the defendant had a screen behind home plate and that no person wanting a protected seat was not accommodated, the defendant has complied with the limited duty rule and therefore cannot be held liable for the injury sustained by the minor.

2. The risk of being hit by a projectile from the playing field is an open and obvious danger to a spectator of a baseball game. A baseball stadium owner is under no duty to warn a spectator of such risk.

Reversed and remanded.

1. NEGLIGENCE — BASEBALL STADIUMS — INJURY TO SPECTATORS FROM PROJECTILES FROM PLAYING FIELD — LIMITED DUTY.

A baseball stadium owner cannot be held liable for injury to a spectator caused by a projectile from the playing field if the owner has satisfied the limited duty of erecting a protective screen in the area behind home plate and providing a number of seats in the area sufficient to meet the ordinary demand for protected seats.

2. NEGLIGENCE — BASEBALL STADIUMS — INJURY TO SPECTATORS FROM PROJECTILES FROM PLAYING FIELD — DUTY TO WARN.

A baseball stadium owner is under no duty to warn a spectator of the risk of being hit or injured by a projectile from the playing field; such risk is open and obvious to the spectator.

*James O. Elliott, (Sommers, Schwartz, Silver & Schwartz, P.C., by Patrick Burkett, of Counsel), for the plaintiffs.*

*Dickinson Wright PLLC (by Barbara H. Erard and Paul R. Bernard), for the defendant.*

Amicus Curiae:

*Thomas, DeGrood, Witenoff & Hoffman, P.C. (by Gary N. Felty, Jr., and John J. Hoffman), for Office of the Commissioner of Major League Baseball.*

Before: BANDSTRA, C.J., and ZAHRA and METER, JJ.

BANDSTRA, C.J. In this case, we are asked to determine whether we should adopt, as a matter of Michigan law, the "limited duty" rule that other jurisdictions have applied with respect to spectator injuries at baseball games. Under that rule, a baseball stadium owner is not liable for injuries to spectators that result from projectiles leaving the field during play if safety screening has been provided behind home plate and there are a sufficient number of protected seats to meet ordinary demand. We conclude that the limited duty doctrine should be adopted as a matter of Michigan law and that there was no evidence presented at trial that defendants failed to meet that duty. Further, we conclude that there is no duty to warn spectators at a baseball game of the well-known possibility that a bat or ball might leave the field. We therefore conclude that there is no evidence to support the verdict rendered on behalf of plaintiffs against defendant and we reverse and remand.

FACTS

Plaintiff Alyssia M. Benejam, a young girl, attended a Tigers game with a friend and members of the friend's family and was seated quite close to the playing field along the third base line. The stadium was equipped with a net behind home plate, and the net extended part of the way down the first and third base lines. Although Alyssia was behind the net, she was injured when a player's bat broke and a fragment of it curved around the net.[1] There was no evidence,

---

[1] Most of the evidence at trial suggested that the bat fragment curved around the net, although it may have traveled in a straight line and bounced off a nearby seat before striking Alyssia.

and plaintiffs do not contend, that the fragment of the bat went through the net, that there was a hole in the net, or that the net was otherwise defective.

Plaintiffs sued the Tigers, claiming primarily[2] that the net was insufficiently long and that warnings about the possibility of projectiles leaving the field were inadequate.[3] The Tigers responded with motions before, during, and after trial arguing that, as a matter of law, plaintiffs could not or did not present any viable legal claim. Those motions were all denied by the trial court. Alyssia suffered crushed fingers as a result of the accident and the jury awarded plaintiffs noneconomic damages (past and future) totaling $917,000, lost earning capacity of $56,700 and $35,000 for past and future medical expenses. Damages are not at issue on appeal.

### STANDARD OF REVIEW

Defendant's arguments concern the duty of care and duty to warn applicable in this case. Questions regarding the nature and extent of a tortfeasor's duty are issues of law subject to review de novo. *Groncki v Detroit Edison Co*, 453 Mich 644, 649; 557 NW2d 289 (1996).

---

[2] In addition, plaintiffs elicited evidence at trial that the Tigers' home plate was too close to the spectator stands (about sixteen inches less than the sixty feet required by a league rule). However, there was no evidence that the league rule was for safety purposes (rather than to define the playing field), nor to suggest how this discrepancy materially increased the risk of injury to Alyssia. Nonetheless, plaintiffs did not include the issue in their "theory of the case" presentation to the jury and do not argue this matter on appeal.

[3] Plaintiffs also sued the maker of the bat, Hillerich and Bradsby, but settled that claim before trial.

STANDARD OF CARE/ PROTECTIVE SCREENING

Defendant argues that although there is no Michigan law directly on point, other jurisdictions have balanced the safety benefits of providing a protective screen against the fact that such screening detracts from the allure of attending a live baseball game by placing an obstacle or insulation between fans and the playing field. The rule that emerges in these cases is that a stadium proprietor cannot be liable for spectator injuries if it has satisfied a "limited duty"—to erect a screen that will protect the most dangerous area of the spectator stands, behind home plate, and to provide a number of seats in this area sufficient to meet the ordinary demand for protected seats. In this case, there is no dispute that the Tigers constructed a protective screen behind home plate, and there was no evidence that the screen was insufficient to meet the ordinary demand for protected seating. Defendant argues the circuit court erred in failing to recognize the limited duty doctrine and in denying motions based on that doctrine for summary disposition, a directed verdict, and judgment notwithstanding the verdict.

Plaintiffs argue against application of the limited duty doctrine and contend that, under usual principles of premises liability, the circuit court correctly concluded that a jury question was presented. Defendant (an invitor) had a duty to exercise ordinary care and prudence and maintain premises reasonably safe for invitees like Alyssia. Plaintiffs argue that the jury verdict was supported by sufficient evidence that the defendant failed to fulfill this duty because it did not

provide a screen extending long enough along the third (and first) base lines.

There is no Michigan case law directly on point.[4] Our review of precedents from other jurisdictions finds overwhelming, if not universal,[5] support for the limited duty rule that defendant advocates. See, e.g., *Lawson v Salt Lake Trappers, Inc*, 901 P2d 1013, 1015 (Utah, 1995); *Bellezzo v Arizona*, 174 Ariz 548, 553-554; 851 P2d 847 (Ariz App, 1993); *Arnold v City of Cedar Rapids*, 443 NW2d 332, 333 (Iowa, 1989); *Friedman v Houston Sports Ass'n*, 731 SW2d 572, 574-575 (Tex App, 1987); *Swagger v City of Crystal*, 379 NW2d 183, 185 (Minn App, 1986); *Rudnick v Golden West Broadcasters*, 156 Cal App 3d 793, 796; 202 Cal Rptr 900 (1984).[6]

---

[4] However, dictum comments in Michigan precedents are consistent with the limited duty rule that defendant advocates. See *Ritchie-Gamester v City of Berkley*, 461 Mich 73, 87; 597 NW2d 517 (1999) (quoting with approval Justice Cardozo's observation that a baseball spectator accepts the danger of possibly being hit by a ball); *Felgner v Anderson*, 375 Mich 23, 45, in 6; 133 NW2d 136 (1965) ("[a] spectator's suit is barred . . . by a lack of negligence on the part of the park owner . . . in the ordinary instance of a batted ball flying into unscreened stands"); *Blakely v White Star Line*, 154 Mich 635, 638; 118 NW 482 (1908) ("It is knowledge common to all that in these [baseball] games hard balls are thrown and batted with great swiftness; that they are liable to be muffed or batted or thrown outside the lines of the diamond, and visitors standing in position that may be reached by such balls have voluntarily placed themselves there with knowledge of the situation, and may be held to assume the risk.").

[5] Plaintiffs argue that two Illinois cases, *Yates v Chicago Nat'l League Ball Club, Inc*, 230 Ill App 3d 472; 172 Ill Dec 209; 595 NE2d 570 (1992), and *Coronel v Chicago White Sox, Ltd*, 230 Ill App 3d 734; 171 Ill Dec 917; 595 NE2d 45 (1992), have rejected the limited duty rule. However, those cases have been superseded by more recent legislation granting baseball owners limited immunity from liability for spectator injuries.

[6] Although we have concentrated our analysis on foreign precedents decided during the last twenty years, courts in other states had previously indicated support for the limited duty rule as well. See, generally, *Perry v Seattle School Dist No 1*, 66 Wash 2d 800; 405 P2d 589 (1965); *McFatridge v Harlem Globe Trotters*, 69 NM 271; 365 P2d 918 (1961); *Schentzel v Philadelphia Nat'l League Club*, 173 Pa Super 179; 96 A2d 181 (1953); *Erick-*

The logic of these precedents is that there is an inherent risk of objects leaving the playing field that people know about when they attend baseball games. See, e.g., *Swagger, supra* at 185 (" '[n]o one of ordinary intelligence could see many innings of the ordinary league [baseball] game without coming to a full realization that batters cannot and do not control the direction of the ball' "), quoting *Brisson v Minneapolis Baseball & Athletic Ass'n*, 185 Minn 507, 509-510; 240 NW 903 (1932).[7] Also, there is inherent value in having most seats unprotected by a screen because baseball patrons generally want to be involved with the game in an intimate way and are even hoping that they will come in contact with some projectile from the field (in the form of a souvenir baseball). See, e.g., *Rudnick, supra* at 802 ("the chance to apprehend a misdirected baseball is as much a part of the game as the seventh inning stretch or peanuts and Cracker Jack"). In other words, spectators know about the risk of being in the stands and, in fact, welcome that risk to a certain extent. On the other hand, the area behind home plate is especially dangerous and spectators who want protected seats should be able to find them in this area. Balancing all of these concerns, courts generally have adopted the limited duty doctrine that prevents liability if there are a sufficient

---

son v Lexington Baseball Club, Inc, 233 NC 627; 65 SE2d 140 (1951); Cincinnati Baseball Club Co v Eno, 112 Ohio St 175; 147 NE 86 (1925); Anderson v Kansas City Baseball Club, 231 SW2d 170 (Mo, 1950); Lorino v New Orleans Baseball & Amusement Co, 16 La App 95; 133 So 408 (1931). The limited duty rule was apparently first recognized almost ninety years ago in Edling v Kansas City Baseball & Exhibition Co, 181 Mo App 327; 168 SW 908 (1914).

[7] Although many of the cases relied on considered baseballs and other objects that left the field of play and caused injury, we see no difference analytically between those situations and the bat fragment at issue here.

number of protected seats behind home plate to meet the ordinary demand for that kind of seating. If that seating is provided, the baseball stadium owner has fulfilled its duty and there can be no liability for spectators who are injured by a projectile from the field.

An oft-cited precedent, *Akins v Glens Falls City School Dist*, 53 NY2d 325; 441 NYS2d 644; 424 NE2d 531 (1981), provides a good illustration of the reasoning employed. There, a spectator at a baseball game was permanently and seriously injured when a sharply hit foul ball struck her in the eye. *Id.* at 327. As is the case in Michigan,[8] New York has disavowed the "assumption of risk" doctrine and thus the *Akins* court analyzed the situation anew, without reliance on that doctrine. *Id.* at 329. In doing so, the court reasoned that

> an owner of a baseball field is not an insurer of the safety of its spectators. Rather, like any other owner or occupier of land, it is only under a duty to exercise 'reasonable care under the circumstances' to prevent injury to those who come to watch the games played on its field. [*Id.* (citations omitted).]

The court noted that "many spectators prefer to sit where their view of the game is unobstructed by fences or protective netting and the proprietor of a ball park has a legitimate interest in catering to these desires." *Id.* at 330. Balancing the interests involved, the court adopted what it considered to be the "majority rule"—"the owner must screen the most dangerous section of the field—the area behind home

---

[8] In Michigan, the assumption of risk doctrine has been disavowed for all nonemployment cases since *Felgner v Anderson*, 375 Mich 23, 55-56; 133 NW2d 136 (1965).

plate—and the screening that is provided must be sufficient for those spectators who may be reasonably anticipated to desire protected seats on an ordinary occasion." *Id.* The *Akins* court reasoned that this rule appropriately recognizes the "practical realities of this sporting event." *Id.* at 331.

We find *Akins* and similar precedents to be well-reasoned and persuasive. It seems axiomatic that baseball fans attend games knowing that, as a natural result of play, objects may leave the field with the potential of causing injury in the stands. It is equally clear that most spectators, nonetheless, prefer to be as "close to the play" as possible, without an insulating and obstructive screen between them and the action. In contrast, a smaller number of spectators prefer the protection offered by screening. The most dangerous part of the spectator stands is the area in the lower deck behind home plate and along each of the baselines. Certainly home plate is the center of the most activity on the field. Most notably, it is there that pitched balls, traveling at great speeds in a line that would extend into the stands, are often deflected or squarely hit into those stands. Quite logically, the limited duty rule protects a stadium owner that provides screening for this most dangerous area and, in so doing, accommodates baseball patrons who seek protected seating. Because the limited duty rule is based on the desires of spectators, it further makes sense to define the extent of screening that should be provided behind home plate on the basis of consumer demand.

Plaintiffs do nothing to argue substantively against the limited duty rule, but merely argue that baseball stadium cases should be governed by usual invitor-

invitee principles, not any special "baseball rule." Thus, plaintiffs argue that the jury properly determined that defendant failed to exercise "ordinary care" and failed to provide "reasonably safe" premises. However, the limited duty rule does not ignore or abrogate usual premises liability principles. Instead, it identifies the duty of baseball stadium proprietors with greater specificity than the usual "ordinary care/reasonably safe" standard provides. The limited duty precedents "do not eliminate the stadium owner's duty to exercise reasonable care under the circumstances to protect patrons against injury." *Friedman, supra* at 574. Rather, these precedents "define that duty so that once the stadium owner has provided 'adequately screened seats' for *all* those desiring them, the stadium owner has fulfilled its duty of care as a matter of law." *Id.*, quoting *McNiel v Ft Worth Baseball Club*, 268 SW2d 244, 246 (Tex App, 1954). The limited duty doctrine establishes the "outer limits" of liability and "thereby prevent[s] a jury from requiring [a stadium owner] to take precautions that are clearly unreasonable." *Bellezzo, supra* at 554. By providing greater specificity with regard to the duty imposed on stadium owners, the rule prevents burgeoning litigation that might signal the demise or substantial alteration of the game of baseball as a spectator sport.

We also note that the precedents applying the limited duty rule are consistent with the reasoning of the closest Michigan case available, *Ritchie-Gamester v City of Berkley*, 461 Mich 73; 597 NW2d 517 (1999). *Ritchie* is not directly on point because it did not involve a spectator at a sporting event but, instead, considered a person injured while participating in rec-

reational ice skating. See *id.* at 75. Nonetheless, the analysis in *Ritchie* is similar to the analysis employed by courts in other jurisdictions as they have developed the limited duty rule with respect to spectator injuries. *Ritchie* considered whether ordinary principles of negligence should be used to determine whether there was liability for an injury resulting from a collision between skaters or, instead, whether the higher recklessness standard should be used. *Id.* at 76. In answering this question, the Court first recognized "the everyday reality of participation in recreational activities," most notably, that "[w]hen people engage in a recreational activity, they have voluntarily subjected themselves to certain risks inherent in that activity." *Id.* at 86-87. With this recognition in mind, the Court concluded that a recklessness standard "most nearly comports with the expectations of participants in recreational activities." *Id.* at 90. In reaching this conclusion, the Court reasoned:

> When a player steps on the field, she must recognize that an injury may occur, but she does not know whether she will be injured, or whether she will inadvertently injure another player. We do not believe that a player expects an injury, even if it results from a rule violation, to give rise to liability. Instead, we think it more likely that players participate with the expectation that no liability will arise unless a participant's actions exceed the normal bounds of conduct associated with the activity.
>
> *     *     *
>
> Consequently, we believe that the line of liability for recreational activities should be drawn at recklessness. [*Id.* at 94.]

The Court further reasoned that an ordinary negligence standard would unduly restrict people in the

enjoyment of recreational skating by promoting a potentially debilitating threat of litigation. *Id.* at 92-93, n 13.

The Court's reasoning in *Ritchie* is similar to that employed by the limited duty precedents described above. For most fans, the everyday reality of attending a baseball game includes voluntarily subjecting oneself to the risk that a ball or bat might leave the field and cause injury. The limited duty rule comports more nearly with that everyday reality than would usual invitor-invitee principles of liability. While requiring that protected seats be provided for those who want them, the limited duty rule leaves the baseball stadium owner free, without fear of liability, to accommodate the majority of fans who prefer unobstructed and uninsulated contact with the game. Under usual invitor-invitee principles of liability, fear of litigation would likely require screening far in excess of that required to meet the desires of baseball fans.

This case, tried under usual invitor-invitee principles of liability, provides a good example. Plaintiff's expert testified that, on the basis of his review of accidents occurring over time in the spectator stands between first base and third base, reasonable safety precautions would include screening in that entire area. In another case, where an injury occurred farther down the baseline, testimony and argument would likely be adduced to support a further extension as "reasonably necessary" to protect fans. The logical result of having these cases governed by usual invitor-invitee principles of liability would be that warned against in *Akins, supra* at 331: "[E]very spectator injured by a foul ball, no matter where he is

seated or standing in the ball park, would have an absolute right to go to the jury on every claim of negligence."

Both because the limited duty doctrine represents a good accommodation of the interests that must be balanced in this case and because it is consistent with the reasoning employed in *Ritchie,* we adopt that doctrine as a matter of Michigan law.[9] Specifically, we hold that a baseball stadium owner that provides screening behind home plate sufficient to meet ordi-

---

[9] Although the concurring opinion in *Ritchie, supra,* is not binding precedent, we note that our decision in this case seems consistent with its analysis. The concurring justices reasoned that the majority had inappropriately employed an "assumption of risk" analysis, even though that doctrine has long been abrogated by Michigan precedents. *Id.* at 102 (BRICKLEY, J., concurring). Nonetheless, the concurring justices noted that assumption of risk has been recognized as surviving in the sense of the "primary assumption of risk." *Id.* at 103-104. Although the concurring justices found this concept to be inapplicable to the facts in *Ritchie,* see *id.* at 104, it would apparently apply to the facts of this case. As authority for the "primary assumption of risk" doctrine, the concurring justices quoted Prosser and Keeton's treatise on Torts. *Id.* at 103. This authority states:

A second situation is where the plaintiff voluntarily enters into some relation with the defendant, with knowledge that the defendant will not protect him against one or more future risks that may arise from the relation. He may then be regarded as tacitly or *impliedly* consenting to the negligence, and agreeing to take his chances. Thus, . . . *he may enter a baseball park, sit in an unscreened seat, and so consent that the players may proceed with the game without taking any precautions to protect him from being hit by the ball.* Again, the legal result is that the defendant is simply relieved of the duty which would otherwise exist. [Prosser & Keeton, Torts (5th ed), § 68, p 481 (first emphasis in original; second emphasis added).]

Similarly, *Felgner, supra,* while generally abrogating the assumption of risk doctrine as an affirmative defense available to a negligent defendant, also recognized that because " 'certain risks of accident attend all outdoor sports,' " *id.* at 45, n 6, quoting *Williams v Wood,* 260 Mich 322, 327; 244 NW 490 (1932), there is no breach of duty giving rise to liability when those inherent risks become reality as in "the ordinary instance of a batted ball flying into unscreened stands." *Felgner, supra.*

nary demand for protected seating has fulfilled its duty with respect to screening and cannot be subjected to liability for injuries resulting to a spectator by an object leaving the playing field.[10] We do not today hold that a baseball stadium operator that does not provide this level of protection can be held liable. For reasons previously noted, there may be an argument that would prevent the imposition of liability in that situation as well.[11] In any event, that is not the situation presented on this appeal and we express no opinion regarding the merits of any such argument.

Applying the limited duty rule here, we conclude that plaintiffs have failed to provide any proof sufficient to find that liability could be imposed. Clearly, there was a screen behind home plate and there was no proof whatsoever that persons wanting seats protected by the screen could not be accommodated. To the contrary, uncontested testimony by Tigers ticket personnel established that protected seating is generally open and available to fans who want it. Accordingly, we conclude that the screening provided by defendant was sufficient under the limited duty doctrine applicable in this case.

### DUTY TO WARN

Plaintiffs also argue that defendant failed to provide an adequate warning regarding the possibility that some object might come flying off the field and cause injury in the stands. However, we conclude that

---

[10] This assumes, of course, that the screening provided is not in a state of disrepair or otherwise in a condition whereby projectiles can permeate it and allow injuries to occur in the protected area of the stands.

[11] See n 9, *supra*.

defendant did not have any duty to warn regarding this well-known risk.

Plaintiffs rely primarily on *Falkner v John E Fetzer, Inc*, 113 Mich App 500; 317 NW2d 337 (1982). While acknowledging the "generally accepted proposition that there is no duty to warn of the risk of being hit by batted balls when attending a baseball game, because the risk is obvious," the *Falkner* panel nonetheless reasoned that "plaintiffs presented an apparently unique record in an attempt to demonstrate that the magnitude of the risk involved is much greater than commonly believed" and, therefore, reasoned that it was "proper to submit to the jury the question whether it would be reasonable to require defendant to warn spectators of the unexpectedly high degree of risk." *Id.* at 502-503. The opinion does not indicate why the record before the panel was "unique." In any event, we conclude that *Falkner* cannot reasonably be understood as suggesting that, in all cases, baseball stadiums have a duty to warn spectators of the risk that objects from the field might cause injury.

As discussed above, one of the premises of the universally adopted limited duty rule for protective screening is the fact that baseball spectators generally know that attending a game involves risks from off-field projectiles. Accordingly, precedents from other jurisdictions conclude that there is no duty to warn regarding this risk. See, e.g., *City of Milton 'v Broxson*, 514 So 2d 1116, 1118-1119 (Fla App, 1987); *Friedman, supra* at 575; *Stradtner v Cincinnati Reds, Inc*, 39 Ohio App 2d 199; 316 NE2d 924 (1972); *Baker v Topping*, 15 AD2d 193, 196; 222 NYS2d 658 (1961); *Anderson v Kansas City Baseball Club*, 231 SW2d 170 (Mo, 1950); *Hunt v Thomasville Baseball Co*, 80

Ga App 572, 573; 56 SE2d 828 (1949). See also, generally, *Neinstein v Los Angles Dodgers, Inc*, 185 Cal App 3d 176, 184; 229 Cal Rptr 612 (1986). As noted by one court, "[i]t would have been absurd, and no doubt would have been resented by many patrons, if the ticket seller, or other employees, had warned each person entering the park that he or she would be imperiled by vagrant baseballs . . . ." *Keys v Alamo City Baseball Co*, 150 SW2d 368, 371 (Tex App, 1941).We find these precedents to be compelling and persuasive. Further, having concluded that the limited duty rule should be adopted in Michigan partly on the premise that spectators know about the dangers of objects leaving the field, it would be inconsistent to impose a duty to warn of those dangers. Finally, to impose such a duty would be contrary to the many Michigan precedents decided since *Falkner*, regarding "open and obvious dangers," with respect to which there is no duty to warn. See, e.g., *Riddle v McLouth Steel Products Corp*, 440 Mich 85, 96; 485 NW2d 676 (1992); *Arias v Talon Development Group, Inc*, 239 Mich App 265, 267; 608 NW2d 484 (2000); *Hughes v PMG Bldg, Inc*, 227 Mich App 1, 10; 574 NW2d 691 (1997); *Novotney v Burger King Corp (On Remand)*, 198 Mich App 470, 472-473; 499 NW2d 379 (1993). *Falkner* has been described as the lone case that supports a duty to warn in this context. *Friedman, supra* at 575. To the extent that it might be read as stating a general rule requiring a duty to warn in all cases, rather than a limited rule applicable only to the "unique record" presented, we decline to follow *Falkner*. We conclude that defendant had no duty to warn plaintiffs regarding the well-known risk that

some object might leave the playing field and cause injury.[12]

Having concluded that, under the facts of this case, defendant did not breach any duty to provide screening and was under no duty to provide a warning to plaintiffs regarding the risk of injury from objects leaving the field, we reverse the jury verdict and remand this matter for entry of an order finding no cause of action against defendant. We need not consider other arguments advanced by defendant in support of that result.[13]

We reverse and remand. We do not retain jurisdiction.

---

[12] We further note that plaintiffs presented little if any evidence regarding how the language of the warnings actually given (a general announcement over the loudspeaker, a notice on the center field video board, and small print language on the back of the ticket) were inadequate. Nor was there any evidence concerning the warning systems used at other ball parks or whether some more effective warning would have made any difference in this case (Alyssia's friend's mother, who chose the seating behind the protective netting, testified that she knew of the risks of balls and bats entering the stands). Accordingly, even if we were to recognize a duty to warn in this context we would conclude that plaintiffs did not present sufficient evidence to support a finding of liability on this basis. See, e.g., *Nichols v Clare Community Hosp*, 190 Mich App 679, 684; 476 NW2d 493 (1991) (observing that when proceeding under a theory of liability based on a negligent failure to warn, proximate cause cannot be established unless it is shown that an adequate warning would have prevented the plaintiff's injury by altering the conduct involved).

[13] Most notably, we do not consider defendant's argument that, considering the "freak" nature of the bat's flight path here, the injury that Alyssia suffered was not foreseeable. We understand this to be a "proximate cause" argument and, having concluded that defendant did not breach any duty, we need not consider whether any alleged breach of duty proximately caused the injury. We note, however, that in similar cases, similar arguments have been accepted. See, e.g., *Curtis v Portland Baseball Club*, 130 Or 93, 96-97; 279 P 277 (1929) (where "the injury sustained was due to a foul ball which performed the remarkable feat of taking a sharp inshoot around the end of the screen and striking plaintiff" the accident "was one which could not reasonably have been anticipated" and the judgment in favor of plaintiff was reversed).