**FOR PUBLICATION**

ATTORNEYS FOR APPELLANTS:

**NICHOLAS J. PAROLISI, JR.**
**MITCHELL H. FRAZEN**
**JAMES R. BRANIT**
Litchfield Cavo LLP
Chicago, Illinois

ATTORNEYS FOR APPELLEE:

**DUKE T. ESCUE**
**WALTER J. ALVAREZ**
**DAVID A. WILSON**
Walter J. Alvarez, P.C.
Crown Point, Indiana

FILED
Feb 15 2013, 9:22 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SOUTH SHORE BASEBALL, LLC, d/b/a | ) | |
| GARY SOUTH SHORE RAILCATS, and | ) | |
| NORTHWEST SPORTS VENTURE, LLC, | ) | |
| | ) | |
| Appellants-Defendants, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1205-CT-222 |
| | ) | |
| JUANITA DeJESUS, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Calvin Hawkins, Judge
Cause No. 45D02-0911-CP-251

**February 15, 2013**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

On May 23, 2009, Juanita DeJesus was injured when she was hit on the head by a foul ball at a Gary South Shore Railcats minor league professional baseball game. DeJesus subsequently filed suit against South Shore Baseball, LLC d/b/a Gary South Shore Railcats and Northwest Sports Venture, LLC (collectively, "Appellants"), alleging that the Appellants were liable for her injuries under a theory of premises liability and for negligently failing to place protective screening continuously from first to third base. Appellants filed a motion for summary judgment, claiming that, under both Indiana law and the nationwide majority rule, they could not be held liable for DeJesus's injuries. The trial court denied the Appellants' motion for summary judgment. Soon thereafter, Appellants sought and were granted permission to bring this interlocutory appeal. Concluding that, as a matter of law, Appellants cannot be held liable for DeJesus's injuries, we reverse the judgment of the trial court and remand with instructions for the trial court to issue an order granting summary judgment in favor of the Appellants.

## FACTS AND PROCEDURAL HISTORY

On May 23, 2009, DeJesus attended the Gary South Shore Railcats opening day baseball game with her fiancé and two friends. The Railcats are a professional minor league baseball team. The undisputed facts indicate that DeJesus was a baseball fan, particularly a fan of the Railcats. DeJesus had attended numerous Railcats games before the game on May 23, 2009, and was aware of the risk of foul balls leaving the field of play and entering the stands.

DeJesus was also aware of numerous warnings provided by Appellants regarding the

2

risk of objects leaving the playing field and entering the stands. Specifically, DeJesus was aware of the warning printed on the back of her ticket:

> WARNING. By using this ticket and entering the Stadium, the ticket holder assumes all risk and danger incidental to the game of Baseball, whether such risks occur prior to, during, or subsequent to the actual playing of the game, including specifically, (but not limited to) the danger of being injured by thrown bats and thrown or batted balls. The holder further specifically agrees that SouthShore Baseball, LLC … [is] not liable for any injuries from such causes and hereby waives and releases the same from any such causes.

Appellants' App. pp. 76, 81, 165. DeJesus was also aware of the warning signs posted in each aisle of the seating area which read "Please Be Aware Of Objects Leaving The Playing Field." Appellants' App. pp. 77, 79, 81. DeJesus also arrived at the stadium early enough on the day in question to hear the following warning read by the stadium announcer:

> The Gary SouthShore RailCats management would like to remind you of the risks inherent to the game of baseball. Thrown bats and batted or thrown balls may enter the seating area at a high rate of speed and, as a result, can be very dangerous. Please be alert at all times and watch out for the youngsters in attendance tonight. The Gary SouthShore RailCats and the City of Gary shall not be liable for injuries or loss of personal property or equipment.

Appellants' App. pp. 81-82.

Shortly after the beginning of the game, the second batter hit a pop-up foul ball. DeJesus saw the batter make contact with the ball and saw the ball pop up in the air. DeJesus noticed that the people sitting around her were looking up in the air, so she looked up in the air as well. DeJesus heard someone say, "Look out," and while DeJesus was looking for the ball, it hit her in the face. Appellants' App. p. 63. As a result of being hit by the foul ball, DeJesus suffered serious injuries, including several fractured bones in her face and blindness in her left eye.

3

DeJesus filed a complaint against South Shore Baseball, LLC on November 24, 2009, alleging that South Shore was liable for her injuries under a theory of premises liability. On March 2, 2011, DeJesus filed her first amended complaint, which restated her claim against South Shore Baseball and added a claim against Northwest Sports Venture, LLC, in which DeJesus claimed that Northwest Sports Venture was liable for her injuries because it negligently failed to provide protective screening continuously from first to third base.[1] Appellants filed a motion for summary judgment in which they asserted that, as a matter of law, they could not be held liable for DeJesus's injuries. The trial court denied Appellants' motion. Soon thereafter, Appellants requested and were granted permission to seek this interlocutory appeal.

## DISCUSSION AND DECISION

Appellants contend that the trial court erroneously denied their request for summary judgment. Specifically, Appellants claim that the trial court should have granted their motion for summary judgment because, as a matter of law, they cannot be held liable for DeJesus's injuries.

### I. Standard of Review

An appellate court reviewing summary judgment analyzes the issues in the same way as would a trial court. *Carie v. PSI Energy, Inc.*, 715 N.E.2d 853, 855 (Ind. 1999). A party seeking summary judgment must establish that "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). The party moving for summary judgment

---

[1] Northwest Sports Venture LLC changed its name to South Shore Baseball, LLC on July 5, 2001. As such, Northwest Sports Venture LLC and South Shore Baseball, LLC are, in reality, two different names for the same entity.

bears the initial burden to establish its entitlement to summary judgment. *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 975 (Ind. 2005). "Only then does the burden fall upon the non-moving party to set forth specific facts demonstrating a genuine issue for trial." *Outcalt v. Wardlaw*, 750 N.E.2d 859, 862 (Ind. Ct. App. 2001), *trans. not sought*. The reviewing court must "construe the evidence in favor of the non-movant, and resolve all doubts against the moving party." *Shambaugh & Son, Inc. v. Carlisle*, 763 N.E.2d 459, 461 (Ind. 2002).

*Pfenning v. Lineman*, 947 N.E.2d 392, 396-97 (Ind. 2011).

## II. Premises Liability

In filing suit against the Appellants, DeJesus claimed that the Appellants should be found liable for her injuries under a theory of premises liability. The elements of premises liability are well-established.

A landowner owes to an invitee or social guest "a duty to exercise reasonable care for his protection while he is on the landowner's premises." *Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind.1991). To articulate the contours of this duty, we have adopted the Restatement (Second) of Torts § 343 (1965):
A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against the danger.

*Burrell*, 569 N.E.2d at 639-40.

*Pfenning*, 947 N.E.2d at 406. Because DeJesus's premises liability claim against the Appellants is predicated on their actions as operators of the baseball stadium, the above-stated requirements apply. Thus, for the Appellants to obtain summary judgment, the

5

designated evidence must demonstrate that at least one of the elements of premises liability is not satisfied. *See id.*

The Appellants argue that the relevant facts are undisputed and preclude a finding that they should have expected that DeJesus would fail to discover or realize the danger of being struck by a foul ball and fail to protect herself against it. Appellants also argue that the potential for foul balls to enter the stands does not involve an unreasonable risk of harm to invitees. We agree.

"It is well known … that it is not possible, at baseball games, for the ball to be kept at all times within the confines of the playing field," *Lorino v. New Orleans Baseball & Amusement Co.*, 133 So. 408 (La. Ct. App. 1931), and "[a]nyone familiar with the game of baseball knows that balls are frequently fouled into the stands and bleachers." *Erickson v. Lexington Baseball Club*, 65 S.E.2d 140, 141 (N.C. 1951). "Such are common incidents of the game which necessarily involve dangers to spectators." *Id.*; *see also McNiel v. Fort Worth Baseball Club*, 268 S.W.2d 244, 246 (Tex. Civ. App. 1954) (noting that a ball being batted into the stands is a circumstance which is commonly incident to the inherent nature of the game of baseball). However, danger notwithstanding, it is widely accepted that "[w]hether baseball fans are viewed as participants in the game itself or merely passive spectators, one thing is certain: the chance to apprehend a misdirected baseball is as much a part of the game as the seventh inning stretch or peanuts and Cracker Jack." *Rudnick v. Golden West Broadcasters*, 202 Cal. Rptr. 900, 905 (Cal. Ct. App. 1984). "In other words, spectators know about the risk of being in the stands and, in fact, welcome that risk to a

certain extent." *Benejam v. Detroit Tigers, Inc.*, 635 N.W.2d 219, 222 (Mich. Ct. App. 2001).

Moreover, the Pennsylvania Superior Court[2] has held that it "think[s] the frequency with which foul balls go astray, alight in the grandstand or field, and are sometimes caught and retained by onlookers at baseball games is a matter of such common everyday practical knowledge as to be a subject of judicial notice." *Schentzel v. Philadelphia Nat. League Club*, 96 A.2d 181, 188 (Pa. Super. Ct. 1953). The Supreme Court of Virginia has stated that spectators cannot watch many innings of an ordinary game without coming to a full realization that batters cannot, and do not, control the direction of the ball which they strike and that foul tips or liners may go in an entirely unexpected direction. *Thurmond v. Prince William Prof'l Baseball Club, Inc.*, 574 S.E.2d 246, 250 (Va. 2003). "'[One] could not hear the bat strike the ball many times without realizing that the ball was a hard object. Even the sound of the contact of the ball with the gloves or mitts of the players would soon apprize him of that.'" *Thurmond*, 574 S.E.2d at 250 (quoting *Brisson v. Minneapolis Baseball & Athletic Ass'n*, 240 N.W. 903, 904 (Minn. 1932)). Furthermore, we agree with the observation of the Massachusetts Supreme Judicial Court that "a spectator familiar with the game assumes the reasonable risks and hazards inherent in the game … [a]nd it is common knowledge that one of these hazards is the possibility of being hit by a foul ball." *Shaw v. Boston Am. League Baseball Co.*, 90 N.E.2d 840, 842 (Mass. 1950) (citing *Hudson v. Kansas*

---

[2] We note that the Pennsylvania Superior Court is one of two intermediate appellate courts in the State of Pennsylvania.

7

*City Baseball Club, Inc.*, 164 S.W.2d 318, 323-24 (Mo. 1942); *Crane v. Kansas City Baseball & Exhibition Co.*, 153 S.W. 1076, 1077-78 (Mo. Ct. App. 1913); *Kavafian v. Seattle Baseball Club Ass'n*, 181 P. 679 (Wash. 1919); *Brisson*, 240 N.W. at 904).

For the purpose of our premises liability jurisprudence, the issue is not what risk the plaintiff subjectively incurred but whether the Appellants objectively should have expected that the plaintiff would be oblivious to the danger or fail to protect herself from it. *Pfenning*, 947 N.E.2d at 406. Again, "[d]uring each and every baseball game, foul balls regularly careen into the grandstand and are oftentimes even caught by spectators." *Romeo v. Pittsburg Assocs.*, 787 A.2d 1027, 1031 (Pa. Super. Ct. 2001). "This reality is a 'matter of such common everyday practical knowledge' that all individuals will be deemed familiar with such 'neighborhood knowledge.'" *Id.* (quoting *Schentzel*, 96 A.2d at 186)).

In the instant matter, the undisputed evidence demonstrates that DeJesus was a baseball fan who was aware of the risk that a foul ball would be hit into the stands. DeJesus acknowledged that she saw the warnings about the potential for balls to enter that stands that were posted throughout the stadium, that she was aware of the similar warning printed on the back of her ticket for admission, and that she heard the verbal warning about the potential for balls to enter the stands that was read by the stadium announcer prior to the start of the game. Further, the record is devoid of any evidence that would create a genuine issue of fact as to whether the Appellants should have expected that patrons, including DeJesus, would not recognize or discover the risk of injury associated with foul balls entering the stands. Accordingly, we find no genuine issue of fact to contravene the objectively reasonable

8

expectation by the Appellants that persons attending a baseball game would realize the risk of being struck by a foul ball and take appropriate precautions.

In addition, we find the absence of a genuine issue of fact regarding the first element of premises liability–that the Appellants had actual or constructive knowledge of a condition on the premises that involved an unreasonable risk of harm to invitees. The determination of duty is one of law for the court, *Pfenning*, 947 N.E.2d at 407 (citing *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003)), and we conclude that, as a matter of law, Appellants cannot be held liable to DeJesus under a theory of premises liability because the risk of getting hit by a foul ball at a baseball game does not amount to an unreasonable risk of harm. Again, it is common knowledge that foul balls may leave the field of play and enter the stands and "one who attends a baseball game as a spectator can properly be charged with anticipating as inherent to baseball the risk of being struck by a foul ball while sitting in the stands during the course of a game." *Pakett v. The Phillies, L.P.*, 871 A.2d 304, 308 (Pa. Commw. Ct. 2005).[3] Further, we agree with our sister jurisdictions which have found that "'[t]he risk of being … hit, with a chance to catch the foul and keep the ball, is one of the exciting thrills of attendance at the game,'" *Id.* (quoting *Boynton v. Ryan*, 257 F.2d 70, 71 (3rd Cir. 1958)), and "[f]or most fans, the everyday reality of attending a baseball game includes voluntarily subjecting oneself to the risk that a ball or bat might leave the field and cause injury." *Benejam*, 635 N.W.2d at 224. Even knowing of this potential risk, the

---

[3] We note that the Pennsylvania Commonwealth Court is the second intermediate appellate court in the State of Pennsylvania.

majority of fans "prefer unobstructed and uninsulated contact with the game." *Id.*, 635 N.W.2d at 224.

In *Pfenning*, the Indiana Supreme Court recognized that the potential to be hit by an errant shot is a risk inherent to being on a golf course and held that the risk of a person on a golf course being struck by a golf ball does not qualify as the "unreasonable risk of harm" referred to in the first two components of the *Burrell* three-factor test relating to liability under a theory of premises liability. 947 N.E.2d at 407. We believe the same reasoning can be applied to baseball. Again, a majority of fans prefer unobstructed and uninsulated contact with the game, and we agree with the Court of Appeals of New York[4] which held that the "perils of the game of baseball … are not so imminent that due care on the part of the owner requires that the entire playing field be screened." *Akins v. Glens Falls City Sch. Dist.*, 424 N.E.2d 531, 533 (N.Y. 1981). As such, we conclude that, like the risk associated with an individual on a golf course, the risk that a spectator at a baseball game might be hit by a foul ball does not qualify as the "unreasonable risk of harm" referred to in the first two components of the *Burrell* three-factor test relating to liability under a theory of premises liability.[5] *See Pfenning*, 947 N.E.2d at 407.

### III. Negligence

---

[4] We note that the Court of Appeals of New York is the top appellate court in the State of New York.

[5] We note that our research has uncovered no jurisdiction that has found that the operators of a baseball stadium should expect that persons attending a baseball game would fail to realize the risk of being struck by a foul ball and take appropriate precautions or that the risk of harm associated with the potential for foul balls to enter the seating area of a baseball stadium amounts to an unreasonable risk of harm to spectators.

10

In filing suit against the Appellants, DeJesus also claimed that the Appellants should be held liable for her injuries under a general theory of negligence because Appellants failed to install protective screening continuously from first to third base. In support of this claim, DeJesus designated the affidavit of Alan R. Caskey, Ph.D., in which Caskey opined that he believed that there should be protective screening continuously from first to third base. DeJesus, however, did not designate any evidence suggesting that any of the generally accepted standards for construction and operation of a baseball stadium would impose a duty on Appellants to erect protective screening continuously from first to third base. Appellants argue that they were entitled to summary judgment on this point as well because, as a matter of law, no such duty exists. We agree.

The majority rule applied by our sister jurisdictions provides that, as a matter of law, operators of a baseball stadium have only a limited duty to provide protective screening in the area behind home plate where the danger of sharp foul tips is greatest. *Turner v. Mandalay Sports Entm't, LLC*, 180 P.3d 1172, 1175 (Nev. 2008); *Benejam*, 635 N.W.2d at 225; *Lawson v. Salt Lake Trappers, Inc.*, 901 P.2d 1013, 1015 (Utah 1995); *Bellezzo v. State*, 851 P.2d 847, 852-53 (Ariz. Ct. App. 1992); *Arnold v. City of City Rapids*, 443 N.W.2d 332, 333 (Iowa 1989); *Akins*, 424 N.E.2d at 533; *McNiel*, 268 S.W.2d at 246; *Brisson*, 240 N.W. at 904. The majority rule provides that management is not required, in order to free itself from negligence, to provide protected seats for all who may possibly request them. *Erickson*, 65 S.E.2d at 141; *Brown v. San Francisco Ball Club*, 222 P.2d 19, 21 (Cal. Ct. App. 1950); *Brisson*, 240 N.W. at 904. It is enough to provide screened seats in sufficient number to

11

accommodate as many patrons as may reasonably be expected to request screened seats on ordinary occasions. *Turner*, 180 P.3d at 1175; *Benejam*, 635 N.W.2d at 225; *Lawson*, 901 P.2d at 1015; *Bellezzo*, 851 P.2d at 852-53; *Arnold*, 443 N.W.2d at 333; *Akins*, 424 N.E.2d at 533; *Brown*, 222 P.2d at 21; *Brisson*, 240 N.W. at 904. However, operators of a baseball stadium need not provide a sufficient number of protected seats for an unusually large crowd. *Brown*, 222 P.2d at 21.

Courts have recognized that, while baseball is not free from danger to those witnessing the game, the operator of a stadium is not an insurer of its patron's safety and the perils are not so imminent that due care on the part of the management requires all the spectators to be screened in. *See Akins*, 424 N.E.2d at 533; *Erickson*, 65 S.E.2d at 141; *Lorino*, 133 So. at 409. "This is in part for the reason that many patrons prefer to sit where their view is not obscured by screening." *Erickson*, 65 S.E.2d at 141. The limited duty rule comports with that everyday reality and, while requiring that protected seats be provided for those who want them, "leaves the baseball stadium operator free, without fear of liability, to accommodate the majority of fans who prefer unobstructed and uninsulated contact with the game." *Benejam*, 635 N.E.2d at 224. Accordingly, the limited duty rule provides that, as a matter of law, an operator of a baseball stadium who "provides screening behind home plate sufficient to meet ordinary demand for protected seating has fulfilled its duty with respect to screening and cannot be subjected to liability for injuries resulting to a spectator by an object leaving the playing field." *Id.* at 225; *see also Turner*, 180 P.3d 1175-76; *Akins*, 424 N.E.2d at 534.

12

We agree with the reasoning set forth by our sister jurisdictions and hereby take this opportunity to expressly adopt the limited duty rule. Moreover, our research has uncovered no jurisdiction that would impose the duty suggested by DeJesus. As such, we conclude that, as a matter of law, Appellants cannot be held liable for DeJesus's injuries so long as they met their limited duty of providing protective screening in front of an adequate number of seats behind home plate.

It is undisputed that the Appellants placed protective screening in front of the seats behind home plate. In addition, DeJesus has designated no evidence suggesting that the number of seats behind the protective screening was insufficient to accommodate the ordinary demand for such seats from the number of patrons who may reasonably be expected to want them, and we find nothing in the record that would suggest that the number of seats available behind the protective screening was not adequate. Furthermore, we note that, with respect to DeJesus specifically, DeJesus has designated no evidence indicating that she and her friends would not have been able to purchase seats behind the protective screening on the day in question if they had chosen to do so. We therefore conclude that Appellants were entitled to summary judgment because, as a matter of law, Appellants satisfied their limited duty to DeJesus and, as a result, could not be held liable for her injuries.

## IV. Conclusion

With respect to DeJesus's claim that Appellants were liable for her injuries under the theory of premises liability, we apply the Indiana Supreme Court's holding in *Pfenning* to the instant matter and conclude that the undisputed designated evidence conclusively establishes

13

that crucial aspects of two of the elements of premises liability are not satisfied. *Pfenning*, 947 N.E.2d at 407. There is no showing that (a) the Appellants should have reasonably expected that their invitees would fail to discover or realize the danger of foul balls entering the stands, and (b) the risk of being struck by a foul ball involved an unreasonable risk of harm. With respect to DeJesus's negligence claim, we adopt the majority rule that the operator of a baseball stadium does not have a duty to place protective screening continuously from first to third base, but rather only in the most dangerous area, *i.e.*, the area directly behind home plate. For these reasons, we conclude that DeJesus cannot prevail on her claims against the Appellants. As such, we reverse the judgment of the trial court and remand with instructions for the trial court to grant the Appellants' motion for summary judgment.

The judgment of the trial court is reversed and the matter remanded with instructions. NAJAM, J., and FRIEDLANDER, J., concur.