# STATE OF MICHIGAN

# COURT OF APPEALS

TORY BAUGHAN,

      Plaintiff-Appellant,

and

MEGAN MACNEILL,

      Plaintiff,

v

MID AMERICA SNOW AND TERRAIN
EXPERT RACERS, doing business as MASTERS
RACING CIRCUIT,

      Defendant/Third-Party Plaintiff-
      Appellee,

and

DEREK ZIMNEY and POLARIS INDUSTRIES,
INC.,

      Third-Party Defendants.

UNPUBLISHED
October 16, 2018

No. 338036
Ontonagon Circuit Court
LC No. 2014-000111-NO

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

PER CURIAM.

      In this interlocutory appeal, plaintiff Tory Baughan[1] appeals by leave granted[2] the trial court's order granting in part and denying in part defendant's motion for summary disposition, in

---

[1] The trial court dismissed plaintiff Megan MacNeill's negligence claim, and this appeal concerns only the court's ruling regarding the applicable standard of care with respect to Baughan's negligence claim. Accordingly, unless otherwise indicated, we use "plaintiff" to refer to Baughan.

which it ruled that a "recklessness" standard of care applies to plaintiff's negligence claim. We reverse the trial court's ruling and hold that defendant is subject to a duty of ordinary care.

## I. BACKGROUND

In February 2012, plaintiffs, Baughan and Megan MacNeill, were injured during a snowmobile "hillclimb" racing event sponsored by defendant.[3] Plaintiffs were watching the race within a designated and unprotected spectator area when Derek Zimney, one of the racers, became dismounted from his Polaris snowmobile on his way up the hill. Zimney's driverless snowmobile continued to travel back down the hill at a high rate of speed before colliding with plaintiffs. Plaintiffs sued under theories of negligence, premises liability, gross negligence, and willful and wanton misconduct.

Defendant moved for summary disposition under MCR 2.116(C)(8) and (C)(10). The motions were denied with respect to the gross negligence and wanton misconduct claims and granted with respect to the premises liability and willful misconduct claims. As a result of the motions, the trial court dismissed MacNeill's negligence claim, concluding that she signed an enforceable waiver of liability. With respect to Baughan's negligence claim, however, the court ruled that a genuine issue of material fact remained and that the applicable standard of care is the "recklessness" standard articulated in *Ritchie-Gamester v City of Berkley*, 461 Mich 73; 597 NW2d 517 (1999), and applied in *Benejam v Detroit Tigers, Inc*, 246 Mich App 645; 635 NW2d 219 (2001).

## II. ANALYSIS

The sole issue before this Court in this interlocutory appeal is whether the limited duty of care adopted in *Ritchie-Gamester* for coparticipants in recreational activities—and extended, in *Benejam*, to baseball stadium owners with respect to spectators—similarly applies with respect to spectators of a snowmobile racing event. We hold that it does not.

"The existence of a legal duty is a question of law for the Court to decide," *Groncki v Detroit Edison Co*, 453 Mich 644, 649; 557 NW2d 289 (1996), and this Court reviews questions of law de novo, *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 471-472; 719 NW2d 19 (2006).

The trial court's determination that a recklessness standard applies to plaintiff's negligence claim is drawn from the rule announced in *Ritchie-Gamester* and applied in *Benejam*. In *Ritchie-Gamester*, 461 Mich at 75, the plaintiff was struck and injured by another skater, who

---

[2] *Baughan v Mid America Snow and Terrain Expert Racers*, unpublished order of the Court of Appeals, entered September 15, 2017 (Docket No. 338036).

[3] Because the third-party defendants are not parties to this appeal, we use "defendant" to refer to Mid America Snow and Terrain Expert Racers, doing business as Masters Racing Circuit.

the plaintiff alleged "was skating backward without keeping a proper lookout behind her" during an open skating session. The Court determined that such allegations merely amounted to carelessness or negligence, and announced "that coparticipants in a recreational activity owe each other a duty not to act recklessly." *Id*. at 90, 95. The Court's analysis was "limited to a determination of the proper standard of care among coparticipants for unintentional conduct in recreational activities." *Id*. at 77.

The *Ritchie-Gamester* recklessness standard has generally been limited to coparticipants in recreational activities. See *Behar v Fox*, 249 Mich App 314, 316-318; 642 NW2d 426 (2001) (recklessness standard applied to youth soccer player's claim against coach for injuries sustained when coach used "full effort" while participating in a scrimmage); *Sherry v East Suburban Football League*, 292 Mich App 23, 27-28; 807 NW2d 859 (2011) (recklessness standard did not apply to injured cheerleader's claim against her coach for failure to supervise).

The trial court here analogized the circumstances in this case to those in *Benejam*, 246 Mich App at 647, 654-657, in which this Court, relying in part on *Ritchie-Gamester*, held that "a baseball stadium owner is not liable for injuries to spectators that result from projectiles leaving the field during play if safety screening has been provided behind home plate and there are a sufficient number of protected seats to meet ordinary demand." There, the plaintiff was seated along the third base line, close to the ball field, when she was struck and injured by a baseball bat fragment. *Id*. at 647. Although the plaintiff was seated behind a net that was affixed behind home plate and partially extended down the first and third base lines, she claimed that the net was not sufficiently long and that the defendant provided inadequate warnings of projectiles leaving the field. *Id*. at 647-648.

*Benejam* was specifically concerned with the general concept of protective screening at baseball stadiums, and this Court essentially adopted the multijurisdictional majority approach for baseball stadium owners' liability. *Id*. at 649-658. "The logic of these precedents is that there is an inherent risk of objects leaving the playing field that people know about when they attend baseball games." *Id*. at 651. This Court also noted the "inherent value" in allowing most seats to remain unprotected, because baseball spectators generally desire to be intimately involved with the game and hope to come in contact with a souvenir baseball from the field. *Id*. Thus, to a certain extent, spectators welcome the risk of their presence knowing that, "as a natural result of play," objects may leave the field and potentially injure them. *Id*. at 651, 653. A critical concept underlying the limited-duty rule also concerns the stadium owner's interest in accommodating fans who enjoy unobstructed seating while also protecting those seated in the most dangerous areas. *Id*. at 656.

In *Van Guilder v Collier*, 248 Mich App 633, 634-637; 650 NW2d 340 (2001), this Court declined to apply the *Ritchie-Gamester* recklessness standard to a negligence action in which the plaintiff was injured in an off-road vehicle (ORV) accident when the defendant, in an attempt to help the plaintiff reach the top of a hill, used his ORV to "nudge" the plaintiff's ORV, causing it to flip over. The trial court relied on *Ritchie-Gamester* in granting the defendant's motion for summary disposition and holding that the standard of care for claims arising out of recreational activity is recklessness, and the plaintiff's allegations merely supported a claim of ordinary negligence. *Id*. at 635. The plaintiff argued on appeal that the trial court's application of a recklessness standard of care was erroneous because the type of recreational activity considered

in *Ritchie-Gamester* did not include the operation of motorized recreation vehicles, and this Court agreed. *Id.* This Court's reasoning was bifurcated. First, it distinguished *Ritchie-Gamester*, and second, it held that under the Michigan Vehicle Code (MVC), MCL 257.1 *et seq.*, an ORV is a motor vehicle, and, therefore, "liability may be imposed for its negligent operation." *Van Guilder*, 248 Mich App at 636-637, 639. This Court addressed *Ritchie-Gamester* as follows:

> In that case, the Court primarily focused its analysis on injuries sustained during the course of recreational activities that typically or foreseeably involve physical contact between coparticipants. To the contrary, a person operating a motorized recreation vehicle does not reasonably expect or anticipate the risk of physical contact, nor is such risk an obvious or necessary danger inherent to its normal operation. The *Ritchie-Gamester* Court did not contemplate injuries that occur as a result of physical contact between two such vehicles. This distinction is dispositive. We decline to adopt defendant's speculative conclusion that our Supreme Court intended that a recklessness standard of care apply with regard to the operation of motorized recreation vehicles simply because they are usually used for recreational purposes. The operation of motor vehicles, including ORVs, is not governed by the "rules of the game," but by the law. [*Id.* at 636-637.]

In this case, the trial court apparently did not consider *Van Guilder*. Instead, it concluded that the *Ritchie-Gamester* reasoning applies "in the same way that it did to the [*Benejam*] spectator case." The court opined that plaintiff is knowledgeable about snowmobiles generally and snowmobile competitions specifically, and that "[t]he possibility that a snowmobile may leave the race course is an inherent risk in snowmobile competitions, of which spectators are aware." The court noted that "more than a few spectators" prefer to be "close to the action" and close to the race course "in unobstructed and uninsulated contact with the sport," and also noted that a more protected observation point was made available to spectators at the bottom of the hill. Finally, the court opined that application of a limited duty would "avoid unduly restricting people in the enjoyment of watching competitive snowmobile competitions by limiting a potentially debilitating threat of litigation."

The trial court's holding is an overextension of the analysis in *Benejam* and is not consistent with the *Ritchie-Gamester* analysis in *Van Guilder*. The trial court's reasoning is flawed because it equates the risk of being struck down by a driverless snowmobile at a snowmobile race with that of objects leaving the field at a baseball game. However, the *Benejam* Court was careful to discuss the "inherent risk"—of which fans are aware—"of objects leaving the playing field" "as a natural result of play." *Benejam*, 246 Mich App at 651-653. As a natural consequence of the game of baseball, objects leave the field; balls are struck, and they often leave the boundaries of the field, in an attempt to score runs. Conversely, a rider becoming dismounted from a snowmobile during a snowmobile race is not a natural consequence of the race because riders do not routinely dismount their snowmobiles in an attempt to win. Therefore, the risk of being struck by a driverless, runaway snowmobile is not an "inherent risk" that occurs as a "natural result" of the race. *Id.* at 651, 653. Furthermore, the *Benejam* Court ascribed significant weight to the "inherent value" in allowing most baseball stadium seats to remain unprotected because baseball spectators generally desire to be intimately involved with the game and hope to come in contact with a souvenir baseball from the field. *Benejam*, 246

-4-

Mich App at 651-653. To a certain extent, baseball spectators welcome the risk they undertake while attending a baseball game, while spectators of snowmobile races cannot be said to openly welcome the risk of coming into contact with a driverless, runaway snowmobile.

In summary, *Benejam* is inapposite to the circumstances of this case because plaintiff's injury was not a natural consequence of spectating at a snowmobile race, and because his injury did not arise from an occurrence that a snowmobile racing fan reasonably anticipates or welcomes to any extent. A person observing a snowmobile racing event "does not reasonably expect or anticipate the risk of physical contact," nor is the risk of being struck by a driverless, runaway snowmobile an "obvious or necessary danger" inherent in the competitive operation of snowmobiles. *Van Guilder*, 248 Mich App at 636.

Finally, defendant argues that MCL 324.82126(8) supports the assertion that plaintiff's proximity to the snowmobile race should have made him aware "that a runaway snowmobile could strike any person within a restricted area" and, accordingly, that a limited duty should apply. The statute pertinently provides:

> Each person who participates in the sport of snowmobiling accepts the risks associated with that sport insofar as the dangers are obvious and inherent. Those risks include, but are not limited to, injuries to persons or property that can result from variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris; and collisions with signs, fences, or other snowmobiles or snow-grooming equipment. Those *risks do not include injuries to persons or property that can result from the use of a snowmobile by another person in a careless or negligent manner likely to endanger person or property*. [MCL 324.82126(8) (emphasis supplied).]

The language of MCL 324.82126(8) does not support defendant's position. Beyond the statute's applicability to persons "who *participate*[] in the sport of snowmobiling," and plaintiff's status as a spectator, its language supports our conclusion that the applicable standard with respect to a spectator is ordinary care. The statute enumerates certain risks that are inherent in the activity of riding snowmobiles and obvious to those who participate in that activity, e.g., ice conditions and bare spots, and clearly indicates that such risks do not include injuries resulting from another's negligent or careless use of a snowmobile. The statute thus recognizes a negligence standard. See *Van Guilder*, 248 Mich App at 636-639.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Brock A. Swartzle